BOODT v BORGESS MEDICAL CENTER

Docket No. 266217. Submitted April 4, 2006, at Detroit. Decided October 31, 2006, at 9:05 a.m. Leave to appeal sought.

Melissa Boodt, as personal representative of the estate of David Waltz, deceased, brought a medical malpractice, wrongful death action in the Kalamazoo Circuit Court against Borgess Medical Center; Michael A. Lauer, M.D.; and Heart Center for Excellence, P.C. The defendants moved to dismiss on the ground that the plaintiff's notice of intent failed to comply with the requirements of MCL 600.2912b. The court, Philip D. Schaefer, J., agreed that the notice of intent was invalid and, because the limitations period had expired, granted the defendants summary disposition. The plaintiff appealed.

The Court of Appeals *held*:

1. The specificity required for a notice of intent under MCL 600.2912b(4) is indistinguishable from the specificity required for a medical malpractice complaint. The plaintiff must set forth the information required by the statute with a degree of specificity that will put the potential defendants on notice about the nature of the claims against them before the plaintiff brings suit. MCL 600.2912b only requires that the information be present in some readily decipherable form, however, not that it be in any particular format.

2. The trial court properly dismissed the claims against Borgess and Heart Center. The notice of intent failed under MCL 600.2912b(4)(a) with respect to those defendants. A careful reading of the notice fails to reveal any indication of how they were factually involved in the underlying events or how the three defendants named in this case are related. Even a medically sophisticated reader would need to guess at the factual basis for the claims against Borgess and Heart Center.

3. The notice of intent was adequate, however, with regard to Lauer. While the notice of intent could have been structured more helpfully, it adequately notified Lauer of the factual basis of the claim against him. The paragraphs stating the applicable standard of care and the actions that should have been taken to comply with that standard merely refer the reader to the paragraph describing

how the standard of care was breached. These internal references are not fatal, however, because the material referred to satisfies the statutory requirements. Even though this material is phrased in the negative and describes what actions Lauer failed to take, a putative medical defendant would not be required to guess at the alleged standard of care or what actions he or she should have taken. Viewed in the context of the entire notice of intent, the facts of the underlying case, and the proper pleading standard, the notice's otherwise insufficient perfunctory statement regarding causation also explains how Lauer's alleged violations of the standard of care resulted in the decedent's death, as required by MCL 600.2912b(4)(e).

4. The trial court's dismissal of Borgess and Heart Center with prejudice must be affirmed. This panel of the Court of Appeals is obligated to follow the binding precedent of *McLean v McElhaney*, 269 Mich App 196 (2005), which held that when a personal representative has filed an untimely action, a successor personal representative is not entitled to commence a new suit. Because the plaintiff brought an untimely action against Borgess and Heart Center as a result of filing a defective notice of intent with respect to them, any personal representative succeeding her is precluded from bringing a new suit. Were it not constrained to follow *McLean*, however, the panel would conclude that, under MCL 600.5852 and *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29 (2003), every personal representative is entitled to two years after receipt of his or her letters of authority within which to file a complaint, subject to the five-year repose period, irrespective of any predecessors, and would thus order that the dismissal with respect to Borgess and Heart Center be without prejudice.

Affirmed in part, reversed in part, and remanded for further proceedings.

WHITE, P.J., concurring, joined in Judge DAVIS's opinion, but wrote separately to make additional observations regarding the conflict between *McLean* and *Verbrugghe v Specialty Hosp-Macomb Co, Inc*, 270 Mich App 383 (2006), which came to the opposite conclusion as *McLean*. The factual distinctions between the four types of cases identified in Chief Judge WHITBECK's opinion do not support differential application of *Eggleston*, which held that any successor personal representative would be entitled to a separate two-year period in which to bring suit. Res judicata does not require that the action be dismissed with prejudice.

WHITBECK, C.J., concurring in part and dissenting in part, agreed with the majority's conclusions regarding the adequacy of

the notice of intent, but disagreed that the dismissal with respect to Borgess and Heart Excellence should be without prejudice. *McLean* was correctly decided, and a conflict with *Verbrugghe* should instead be declared. Of the four categories of cases concerning a successor personal representative's ability to pursue an action, this action involves a successor personal representative's attempt to file a new action to overcome a predecessor's filing of an untimely action. As *McLean* recognized, under MCL 700.3613, the successor personal representative inherits the predecessor's status, and his or her substitution into an untimely action would be futile.

*Turner & Turner, P.C.* (by *Matthew L. Turner*), for Melissa Boodt.

*Smith Haughey Rice & Roegge* (by *William L. Henn* and *Carol D. Carlson*) for Borgess Medical Center.

*Willingham & Coté, P.C.* (by *Curtis R. Hadley* and *James L. Dalton*), for Michael A. Lauer, M.D.; and Heart Center for Excellence, P.C.

Before: WHITE, P.J., WHITBECK, C.J., and DAVIS, J.

DAVIS, J. Plaintiff appeals as of right the trial court's order dismissing her wrongful death, medical malpractice claim pursuant to MCR 2.116(C)(7) and (C)(8). The trial court dismissed this action with prejudice because it found plaintiff's notice of intent to sue, MCL 600.2912b, inadequate, resulting in the suit being untimely. We reverse the dismissal will respect to the individual doctor, we affirm the dismissal with prejudice with respect to the corporate defendants, and we remand the case.

We affirm the dismissal with prejudice with respect to the corporate defendants only because we are bound to follow the earlier holding of this Court in *McLean v McElhaney*, 269 Mich App 196; 711 NW2d 775 (2005), which mandates such a result. Pursuant to MCR 7.215(J)(2), we declare a conflict with *McLean* and state

that, if we were not obligated to follow *McLean*, we would order the dismissal to be without prejudice.

### I. FACTS

On October 6, 2001, decedent David Waltz was admitted to Borgess Medical Center for treatment of cardiac complaints. Defendant Michael Andrew Lauer, M.D., performed a percutaneous transluminal coronary angioplasty[1] (PTCA) on the decedent. During the procedure, Dr. Lauer perforated the decedent's coronary artery, causing massive bleeding. At his deposition, Dr. Lauer admitted that the perforation directly caused the decedent to die of anoxic brain injury. On January 13, 2003, pursuant to MCL 600.2912b, plaintiff served defendants with notice of intent to sue. Plaintiff filed a complaint on June 19, 2003. Defendants moved to dismiss on the ground that plaintiff's notice of intent failed to comply with the statutory requirements. The trial court agreed that the notice of intent was invalid and, because the period of limitations had expired, dismissed the action pursuant to MCR 2.116(C)(7) and (C)(8). Plaintiff appeals the dismissal and, in the alternative, argues that any dismissal should have been without prejudice to permit her successor personal representative to file a new complaint.

### II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of

---

[1] This is a medical procedure that is also known as "balloon angioplasty" or simply "angioplasty." It entails inserting a thin balloon-tipped tube into an artery that has narrowed, frequently because of a plaque buildup or a clot, and then inflating the balloon. The purpose is to widen the artery to facilitate blood flow.

law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Under MCR 2.116(C)(7), if the claim is allegedly barred, the trial court must accept as true the contents of the complaint, unless they are contradicted by documentary evidence submitted by the moving party. *Id.*, p 119. Under MCR 2.116(C)(8), only the pleadings are considered, and the motion should be granted only if the claims are legally unenforceable. *Id.*, pp 119-120. Issues of statutory interpretation present questions of law and are therefore also reviewed de novo. *Rohde v Ann Arbor Pub Schools*, 265 Mich App 702, 705; 698 NW2d 402 (2005).

### III. LEGAL STANDARDS APPLICABLE TO NOTICES OF INTENT

A medical malpractice claimant is required, among other prerequisites to commencing suit, to provide a health facility or practitioner with a written notice of intent setting forth several statutorily enumerated statements about the intended suit. MCL 600.2912b; *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 685-686; 684 NW2d 711 (2004). Specifically, under MCL 600.2912b(4):

> The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
>
> (a) The factual basis for the claim.
>
> (b) The applicable standard of practice or care alleged by the claimant.
>
> (c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
>
> (d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.

(e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.

(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

A claimant is not required to ensure that all of the above are *correct*, but the claimant must make a good-faith effort to "set forth [the information] with that degree of specificity which will put the potential defendants on notice as to the nature of the claim against them." *Roberts, supra,* p 701. The expected level of specificity must be considered in light of the fact that discovery would not yet have begun. *Id.,* p 691. The details need only "allow the potential defendants to understand the claimed basis of the impending malpractice action . . . ." *Id.,* p 692 n 7.

The specificity required for the notice of intent is functionally indistinguishable from the standard applicable to general civil complaints. This Court has observed "that a complaint [must] contain a 'statement of the facts' and the 'specific allegations necessary reasonably to inform the adverse party of the nature of the claims' against it." *Nationsbanc Mortgage Corp of Georgia v Luptak,* 243 Mich App 560, 566; 625 NW2d 385 (2000), quoting MCL 2.111(B). Medical malpractice claims must be pleaded so as to " 'advise the defendant with reasonable certainty, according to the circumstances of the case, of the facts upon which plaintiff proposes to rely, and will seek to prove . . . .' " *Simonelli v Cassidy,* 336 Mich 635, 644; 59 NW2d 28 (1953), quoting *Creen v Michigan C R Co,* 168 Mich 104, 111-112; 133 NW 956 (1911). Therefore, we conclude that the specificity required of a notice of intent as it addresses each of the subsections under MCL

600.2912b is indistinguishable from the specificity required of a medical malpractice complaint.[2]

With respect to a medical malpractice claim, " 'it is essential to allege, with reasonable definiteness and certainty, the duty of the physician or surgeon to the person injured, the breach of duty complained of, the causal relation between the breach of duty and the injuries complained of, and resulting damage.' " *Simonelli, supra*, p 644, quoting 70 CJS, Physicians and Surgeons, § 61, p 985. Our Supreme Court more recently reaffirmed *Simonelli*, noting that the question "was whether the complaint . . . provided sufficient facts to support a cause of action" and that *Simonelli* "hinged on the importance of fair notice to the defendant and not some procedural quirk . . . ." *Dacon v Transue*, 441 Mich 315, 332-333; 490 NW2d 369 (1992). Significantly, our Supreme Court explained that *Simonelli* "applied general principles of pleading." *Id.*, p 332. The important principle is that a defendant must not be forced "to guess upon what grounds plaintiff believes recovery is justified," but at the same time plaintiffs should not be subject to the "straightjacket" of "[e]xtreme formalism . . . ." *Id.*, p 329, citing *Clements v Constantine*, 344 Mich 446; 73 NW2d 889 (1955).

---

[2] We do not mean to imply that the notice of intent *is* a pleading. It is clearly not an ordinary pleading under the general rule. MCR 2.110(A). An affidavit of merit or an affidavit of meritorious defense, as required by MCL 600.2912d or MCL 600.2912e, is a pleading. *Kowalski v Fiutowski*, 247 Mich App 156, 163-164; 635 NW2d 502 (2001), citing MCR 2.112(L). Our court rules do not explicitly refer to a notice of intent under MCL 600.2912b. However, we only hold that a notice of intent requires no greater specificity than a pleading, especially given that the notice of intent does not itself even commence a suit. Rather, the notice merely advises a potential defendant that a claim exists, in the hopes of "encourag[ing] settlement without the need for formal litigation." *Neal v Oakwood Hosp Corp*, 226 Mich App 701, 715; 575 NW2d 68 (1997).

It is therefore a deeply entrenched rule of Michigan jurisprudence and basic fairness that all pleadings are sufficient if they communicate to the opposing party the nature of the claims or defenses those pleadings purport to raise. "[I]n the absence of a contrary expression by the Legislature, well-settled common-law principles are not to be abolished by implication in the guise of statutory construction." *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 652; 513 NW2d 799 (1994). A statute "in derogation of the common law, . . . though it may be for the good of the public, must be construed strictly, . . . and [its] provisions can be enforced no farther than they are clearly expressed." *Sibley v Smith*, 2 Mich 486, 490 (1853). We perceive no clear expression by the Legislature that we should impose a heavier burden of specificity on a mere notification of an impending claim than on the complaint itself.

Furthermore, our Supreme Court has explained that MCL 600.2912b *only* requires that the information for the categories be *present* in some readily decipherable form, not that it "be in any particular format." *Roberts*, *supra*, p 696. Thus, although separating these pieces of information into separately headed paragraphs may be useful to the reader, and therefore may be the better practice, it is by no means necessary as long as the required information can actually be found somewhere in the document without difficulty.

IV. THE NOTICE OF INTENT HERE

We agree that the notice of intent at issue here could have been structured more helpfully, but we decline to read any part of the notice in isolation. Our analysis examines whether the *notice* contains the required information, not whether any specific portion of the notice does.

A careful reading of the notice of intent fails to reveal *any* indication of how Borgess Medical Center or Heart Center for Excellence, P.C., is involved in the underlying events. The notice of intent does not even indicate how the three named defendants are related. Even a medically sophisticated reader would have to guess at the factual basis for making a claim against Borgess Medical Center or Heart Center for Excellence. Therefore, the notice of intent necessarily fails with respect to Borgess Medical Center and Heart Center for Excellence for failing to set forth a statement of the factual basis for the claim against them, as required by MCL 600.2912b(4)(a).

Conversely, regarding Dr. Lauer, the notice states that "the factual basis for the claim" is that "[o]n October 6, 2001, Mr. Waltz presented to defendants for an elective PTCA. During the procedure, the defendant caused a perforation which lead [sic] to Mr. Waltz' death." There is no guesswork involved in deducing that "the defendant" refers to the only named defendant who is an individual in his own right and, therefore, physically capable of taking the actions resulting in the perforation. A layperson might not know what "an elective PTCA" is, but it is highly unlikely that medical professionals would not understand their own abbreviations simply because they are placed in a legal context. Therefore, the notice of intent adequately notifies defendant Dr. Lauer of the factual basis of the claim alleged against him.

The paragraphs purporting to state the applicable standard of care and the actions that should have been taken to comply with the standard of care both merely refer the reader to the paragraph containing the manner in which the standard of care was breached. Given our Supreme Court's explanation that no particular format need be followed, it is elevating form over function to find these paragraphs necessarily insuffi-

cient. In *Roberts*, the notice of intent contained similar internal references. *Roberts, supra*, pp 696-698. However, our Supreme Court did *not* hold that such internal references in any way degrade the notice's usefulness *per se*. Rather, in *Roberts* the notice of intent simply did not contain the necessary information. *Id*. The format of the notice of intent here merely purports to combine the requirements of MCL 600.2912b(4)(b), (c), and (d) into a single paragraph. Although this might be a risky practice that lends itself to misconstruction and appeals, it is not an inherently fatal deficiency. Again, we review the notice as a whole.

The paragraph referred to in the notice contains 28 individual assertions of wrongdoing by defendant. Plaintiff apparently admits that the first 21 of these are mere boilerplate, and indeed they appear to be little more than the generic statements that our Supreme Court deemed inadequate in *Roberts*. However, seven of the subparagraphs set forth specific actions that defendant allegedly failed to take, thereby breaching the applicable standard of care. These seven subparagraphs are distinct, cleanly phrased, and, even though they follow boilerplate language, they are not in any way hidden. Any reader of the document could not help but become aware of the specific breaches being alleged against Dr. Lauer. Because the notice as a whole could only be construed as applying against the individual defendant, it is not necessary to name him for the reader to understand that these allegations are leveled only against him. These seven subparagraphs satisfy the requirements of MCL 600.2912b(4)(b) and (c). They are as follows:

v. Failed to earlier terminate the procedure when the lesion could not be initially crossed with the wire;

w. Failed to timely recognize the perforation and stop the anticoagulation and order an echocardiogram;

x. Failed to timely insert a balloon pump after the perforation was recognized;

y. Failed to timely perform a pericardiocentesis once the perforation was recognized;

z. Failed to perform repeat attempts of pericardiocentesis after the first failed;

aa. Failed to timely contact a surgeon once the perforation was recognized;

bb. Failed to keep the LAD [left anterior descending artery] wire in place in order to maintain access to that vessel.

Although these subparagraphs are phrased in the negative, i.e., stating what actions defendant *failed* to take, there is no reason to presume that a putative medical defendant would be forced to guess at the alleged standard of care, or at the actions he allegedly should have taken to comply with the standard of care, from these negatively phrased statements. Our Supreme Court noted that if, for example, a physician is alleged to have amputated the wrong limb, "it would be obvious to a casual observer" that the physician should have amputated the correct limb. *Roberts, supra,* p 694 n 12. Our Supreme Court did not consider a failure to diagnose an ectopic pregnancy to be so obvious, but that was in the context of a circular statement to the effect that the standard of care was the standard of care. *Id.,* p 695 n 12. Here the standard of care explicitly refers to the negatively phrased statements. In this case, no guesswork is required to appreciate that the standard of care is to have taken the actions that defendant allegedly failed to take. For the same reason, it is obvious that plaintiff alleges that defendant should have taken those actions in order to comply with the standard of care.

Finally, the notice of intent states, "If the standard of care had been followed, Mr. Waltz would not have died

on October 11, 2001." This perfunctory statement, taken by itself, would be insufficient to explain how defendant's alleged violations of the standard of care resulted in the death, as required by MCL 600.2912b(4)(e). However, it must be viewed in the context of the entire document, the facts underlying the case, and the proper pleading standard. The notice of intent, as a whole, reveals that Dr. Lauer was conducting a procedure on a major blood vessel that involved inserting a wire into that vessel, and that during the procedure Dr. Lauer perforated the blood vessel. Dr. Lauer then failed to take steps that might have permitted him or a surgeon to repair the vessel, such as stopping the administration of an anticoagulant,[3] performing a pericardiocentesis,[4] notifying a surgeon, and maintaining access to the blood vessel.

Although much of the terminology would make sense only to someone knowledgeable about medicine or a medical professional, defendants are, in fact, all medical professionals or medical facilities operated by medical professionals. In any event, there is no real guesswork involved in coming to the conclusion that Dr. Lauer poked a hole in an artery, causing massive bleeding that was not stopped in time to prevent the decedent's death. Finally, the purpose of the notice of intent is to give notice of a claim against the specified parties. Defendants, as medical professionals, presumably keep records of their medical procedures and undoubtedly recall any unusual mishaps with their patients. Before discovery has begun, it is defendants who have the most ready access to essentially all the information about a given case. Under the pleading standard we have articulated, a medical malpractice plaintiff is only obligated to

[3] A drug or chemical that prevents blood from clotting.

[4] A procedure to draw fluid out of the sac surrounding the heart.

provide defendants with notice of the claims against them at a presuit stage of the proceedings. The defendants have in their possession most of the pertinent facts from their own records. It strains credulity to conclude that they would not understand the nature of the suit against them after reading the notice of intent here. Therefore, this notice of intent meets all the requirements of MCL 600.2912b(4) with respect to Dr. Lauer.

We therefore conclude that the notice of intent here was adequate with respect to Dr. Lauer and inadequate with respect to Borgess Medical Center and Heart Center for Excellence. The trial court therefore should not have dismissed the claim against Dr. Lauer, but it properly dismissed the claims against Borgess Medical Center and Heart Center for Excellence.

## V. DISMISSAL WITH OR WITHOUT PREJUDICE

Plaintiff then argues that if any claims are dismissed, they should be dismissed without prejudice so that a new personal representative could be appointed. Plaintiff argues that the wrongful death saving provision, MCL 600.5852, would grant the successor personal representative additional time in which to commence a new suit. Given our holding, this is moot with respect to Dr. Lauer, but we nevertheless address it because we agree that the notice of intent was insufficient and dismissal was thus appropriate with respect to the two medical facility defendants.

Under MCL 600.5852, the personal representative of a decedent has two years after receipt of letters of authority in which to commence a wrongful death action based on medical malpractice. This provision does not specifically state, in so many words, whether a *successor* personal representative receives an *indepen-*

*dent* two-year period in which to commence suit. Our Supreme Court addressed this issue in *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29; 658 NW2d 139 (2003). Our Supreme Court unanimously held that this Court had, in our previous attempts to interpret MCL 600.5852, erroneously "misquoted the statute by inserting 'the' before 'letters of authority.' " *Id.*, p 32. Thus, our Supreme Court explained:

> The language adopted by the Legislature clearly allows an action to be brought within two years after letters of authority are issued to the personal representative. The statute does not provide that the two-year period is measured from the date letters of authority are issued to the initial personal representative. [*Id.*, p 33.]

Therefore, our Supreme Court held that a successor personal representative receives a new, independent two-year period in which to commence suit, albeit as long as he or she does so within the five-year repose period.

This Court has published two opinions addressing the more specific situation presented here: the first personal representative has filed an untimely action, and a successor personal representative seeks to file a new action to overcome the untimeliness of his or her predecessor's action. Significantly, those two opinions reached opposing and irreconcilable results. In *McLean v McElhaney*, 269 Mich App 196; 711 NW2d 775 (2005), a panel of this Court concluded that a successor personal representative was not entitled to commence a new suit. In *Verbrugghe v Select Specialty Hosp-Macomb Co, Inc*, 270 Mich App 383; 715 NW2d 72 (2006), another panel of this Court reached the opposite conclusion. The *McLean* panel concluded that the plaintiffs were afforded their full two years in which to

commence suit but failed to do so because of their own negligence rather than because of uncontrollable circumstances, so *Eggleston*'s interpretation of MCL 600.5852 was inapplicable and the successor personal representative was not entitled to a new saving period. The *Verbrugghe* panel concluded that *McLean* had ignored the plain language of the statute, on which *Eggleston* had relied, and determined that MCL 600.5852 granted successor personal representatives a second bite of the apple. However, instead of declaring a conflict with *McLean*, the *Verbrugghe* panel concluded that *McLean* was not binding.

Under our court rules, "[w]hen a panel is confronted with two conflicting opinions published after November 1, 1990, the panel is obligated to follow the first opinion issued." *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 473; 556 NW2d 517 (1996). We are therefore bound to follow the result reached by the *McLean* panel. Under the dictates of *McLean*, because plaintiff brought an untimely action against the corporate defendants as a result of filing a defective notice of intent with respect to them, any successor personal representative is precluded from bringing a new suit. Accordingly, we are required to affirm the dismissal with prejudice of the claims against the corporate defendants.

### VI. CONFLICT WITH *McLEAN*

However, we believe, as did the *Verbrugghe* panel, that *McLean* was incorrectly decided because it simply failed to follow the plain rule articulated in the statute and by our Supreme Court. In *Eggleston*, a successor personal representative filed a complaint within two years of his appointment, but more than two years after the first personal representative was appointed. *Eggleston, supra*, p 31. That was the *only* fact that our

Supreme Court deemed relevant to its straightforward reading of the statute and the simple rule that every personal representative is entitled to two years after receipt of his or her letters of authority within which to file a complaint, irrespective of any predecessors. Therefore, *Eggleston* holds that a successor personal representative does indeed receive a new, independent two-year period in which to commence suit, albeit as long as he or she does so within the five-year repose period, *irrespective of* a predecessor's failed suit. The *McLean* panel applied a factual distinction, without any authority, that is not explicitly set forth in the statute and was not identified as relevant by our Supreme Court. We believe that this was erroneous.

We recognize that MCL 700.3613 states in relevant part, "After appointment and qualification, a successor personal representative must be substituted in all actions and proceedings in which the former personal representative was a party." Thus, if the predecessor representative actually filed a complaint and a successor representative is appointed while the complaint is pending, the successor must be substituted in the already commenced claim. It does not follow, however, that the dismissal here should have been with prejudice. The only issue decided in this case is that the notice of intent was insufficient and that the action must be dismissed on that basis. A dismissal on this basis alone would never be with prejudice because it is not a decision on the merits. *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 47; 594 NW2d 455 (1999). It is a separate question whether the period of limitations has expired. While *Roberts* tells us that the period of limitations is not tolled when a complaint is preceded by an insufficient notice of intent, plaintiff does not rely on a tolling of the period of limitations. Rather, plaintiff asserts that her successor personal

representative (who was appointed on May 24, 2005) had until October 6, 2006 to file a complaint. Under MCL 600.5852 and *Eggleston,* this is correct. We believe the dismissal with respect to the corporate defendants should have been without prejudice, and we perceive no reason why MCL 700.3613 should affect our analysis.

Despite our belief that *McLean* was wrongly decided, we are required by MCR 7.215(J)(1) to follow it. Therefore, as stated above, dismissal of the claims in this case with respect to the corporate defendants must be with prejudice. However, we recommend, pursuant to MCR 7.215(J)(2) and (3), that this case be submitted to a special panel to resolve whether a successor personal representative may, under MCL 600.5852, receive a new two-year period in which to file suit and thereby overcome a predecessor's untimely filing.

### VII. CONCLUSION

We note that the only substantive disagreement on this panel concerns whether *McLean* was correct in its application of MCL 600.5852 to successor personal representatives' attempts to file actions after predecessor personal representatives filed untimely actions and whether a conflict panel should therefore be convened on that narrow basis. This panel is otherwise unanimous regarding the law that is binding on us. There is no disagreement about the standard of pleading applicable to notices of intent or the conclusions that the notice of intent here was adequate with respect to Dr. Lauer but inadequate with respect to Borgess Medical Center and Heart Center for Excellence.

The order dismissing the claim against defendant Dr. Lauer is reversed. The order dismissing with prejudice the claims against Borgess Medical Center and Heart

Center for Excellence is affirmed. The matter is remanded for further proceedings. We do not retain jurisdiction.

WHITE, P.J. (*concurring*). I join in Judge DAVIS's opinion and write separately to make a few additional observations regarding the conflict between *McLean v McElhaney*, 269 Mich App 196; 711 NW2d 775 (2005), and *Verbrugghe v Select Specialty Hosp-Macomb Co, Inc*, 270 Mich App 383; 715 NW2d 72 (2006).

Like Judge DAVIS, I conclude that *McLean*'s holding that the dismissal in that case was properly entered with prejudice is incorrect.[1] Further, I conclude that the factual distinctions between the four types of cases identified in Chief Judge WHITBECK's opinion do not support differential application of *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29; 658 NW2d 139 (2003).

The first group is defined as cases "when a successor personal representative attempts to file an action because the predecessor personal representative never filed an action[.]" *Post* at 652. *Eggleston* is such a case. As observed in *Verbrugghe*, and by Judge DAVIS here,

---

[1] I observe that the instant case differs from *McLean* and *Verbrugghe* in that, here, the first action was dismissed for failure to provide a sufficient notice of intent to sue (NOI), while *McLean* and *Verbrugghe* concerned the timeliness of the first actions in light of *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004). While this distinction should not, in my view, lead to different results in the cases, it does provide a basis for distinguishing *McLean*, to the extent that *McLean* relied on a conclusion that the *Waltz* dismissal was a decision on the merits. While I disagree with the *McLean* Court's conclusion that the *Waltz* dismissal was a decision on the merits, it is possible that the *McLean* panel would have recognized that a dismissal for an inadequate NOI is not a decision on the merits. Nevertheless, because both deficiencies lead to a dismissal on statute of limitations grounds under the facts presented, I agree that *McLean* is legally indistinguishable.

the *Eggleston* Court made no reference to the facts of that case as justifying a particular interpretation of MCL 600.5852. Rather, the Supreme Court, in a short and direct opinion, rejected the Court of Appeals conclusion that " 'the two-year limitation period begins when the probate court issues the letters of authority to the personal representative, regardless of whether the court later appoints one or more successor personal representatives.' " *Eggleston,* 468 Mich at 32. The Supreme Court held that the statute "clearly allows an action to be brought within two years after letters of authority are issued to the personal representative. The statute does not provide that the two-year period is measured from the date letters of authority are issued to the initial personal representative." *Eggleston,* 468 Mich at 33. The Court made no mention of the fact that the original personal representative died or that he did not have a full two years in which to file suit. Nor did the Court observe that the two personal representatives together did not have a total of two years of authority to file suit. The Court nowhere intimated that the statute allowed for such distinctions.

Also classified as a group-one case, in which the Court properly concluded that the second personal representative's action was timely under *Eggleston,* is *Rheinschmidt v Falkenberg,* unpublished opinion per curiam of the Court of Appeals, issued March 30, 2006 (Docket No. 261318).[2] In *Rheinschmidt,* the original personal representative mailed a notice of intent (NOI) on April 28, 2004, more than two years after the date of the decedent's death (July 18, 2001), but within two

---

[2] Application for leave to appeal held in abeyance pending decision in *Washington v Sinai Hosp of Greater Detroit,* unpublished opinion per curiam of the Court of Appeals, issued December 1, 2005 (Docket No. 253777), lv gtd 475 Mich 909 (2006). See 721 NW2d 220 (Mich, 2006).

years of her appointment as personal representative on June 11, 2002. She never filed suit, however, and on September 16, 2004, the probate court issued letters of authority to the plaintiff, who commenced suit on October 28, 2004. Had the original personal representative filed an action after the mandatory NOI waiting period, the claim would have been time-barred under *Waltz*. However, the *Rheinschmidt* panel[3] concluded that

> *Waltz* and the related cases cited by defendants have no effect on the situation here in which the successor personal representative's complaint was timely solely under § 5852. In *Eggleston, supra,* our Supreme Court addressed the issue whether a successor personal representative has two years after appointment to file an action on behalf of an estate under the wrongful death saving statute where the initial personal representative died before a complaint was filed. *Id.* at 30. The Court rejected this Court's "narrow reading" to the contrary, and held that a successor representative could make use of his own additional saving period. . . .

> Here, the original personal representative, who was issued letters of authority on June 11, 2002, had two years from that date, until June 11, 2004, to commence a wrongful death medical malpractice action. But she never filed a complaint. Plaintiff was appointed successor personal representative, and issued letters of authority on September 16, 2004. Under § 5852 plaintiff, as the successor personal representative, had from the date of his appointment, September 16, 2004, until June 7, 2006, three years after the expiration of the medical malpractice limitation period, to bring a wrongful death medical malpractice claim on behalf of the decedent's estate. Plaintiff filed his complaint on October 28, 2004, less than two months after his letters of authority were issued. Because plaintiff, as the successor personal representative, filed a complaint within two years after letters of authority were issued to him, and less than three years after the medical

---

[3] Chief Judge WHITBECK was on this panel.

malpractice period of limitations had run, the action was timely. MCL 600.5852; *Eggleston, supra.*[4]

---

[4] We further reject defendants' contention that *Eggleston* is properly applicable only to situations where a successor representative is appointed by necessity rather than by choice. MCL 600.5852 contains no such limitation, and we decline to read it into the plain language of the statute. Further, we find the present case distinguishable from *McLean v McElhaney*, 269 Mich App 196 [], because in *McLean* the purported successor personal representative tried to revive an untimely, but otherwise valid, complaint.[4] Here, plaintiff is not trying to revive an untimely complaint but rather filing an original complaint under the two-year saving provision afforded to him by the issuance of his letter of authority.

---

[*Rheinschmidt,* slip op at 4-5.]

As recognized by the *Rheinschmidt* footnote, there is no basis to limit MCL 600.5852 to cases in which the successor representative is appointed by necessity. Further, there is no basis on which to limit it to cases in which the original personal representative does not go through the motions of filing an untimely suit. The only distinction between this case and *Rheinschmidt,* other than the fact that this is an NOI case and *Rheinschmidt* is a *Waltz* case, is that here the first personal representative filed an action following the deficient NOI, and

---

[4] Upon first reading, it appears that the *Rheinschmidt* panel may have mistaken *McLean* for a group-three case (in which a successor personal representative does not attempt to file a new action, but attempts to revive a previously filed untimely action) because it distinguished *McLean* on the basis that it involved an attempt to revive an untimely, but otherwise valid, complaint, while *Rheinschmidt* involved the filing of an original complaint. However, while the opinion uses the word "revive," the panel was more likely drawing a distinction between a case in which a complaint had been filed and determined to be untimely and one in which no case had previously been filed.

that action was thus dismissed as untimely, and, in *Rheinschmidt,* the first personal representative never filed the first suit, which was already time-barred and would have been dismissed had it been filed. The significance of this fact can only be that, in one case, principles of res judicata apply and, in the other, no such principles are involved because no suit was actually filed. However, a dismissal for failure to file a satisfactory NOI is a dismissal on procedural grounds, not on the merits, and is not ordinarily a dismissal with prejudice. *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 47; 594 NW2d 455 (1999). Such a dismissal is only entered with prejudice when it would be impossible to bring another action. Because of the very reasons expounded in *Rheinschmidt,* no such impossibility is present here.

The second group of cases described by the dissent is that in which "a successor personal representative attempts to file an action when a predecessor tried to file an action but was not authorized to do so[.]" *Post* at 652. In *Myers v Marshall Med Assoc, PC*, unpublished opinion per curiam of the Court of Appeals, issued March 23, 2006 (Docket No. 264667) (*Myers II*),[5] the same panel as in *Rheinschmidt* found that the second personal representative was not barred by the first representative's untimely action, the dismissal of which had been affirmed by the *Myers I*[6] panel on the basis that the first personal representative was removed before he filed the NOI and suit. The panel found *Eggleston* controlling. One can certainly see the distinction between *Myers II* and the instant case, in that the initial personal representative had the author-

---

[5] Application for leave to appeal held in abeyance pending decision in *Washington, supra.* See 720 NW2d 298 (Mich, 2006).

[6] *Myers v Marshall Med Assoc, PC,* unpublished opinion per curiam of the Court of Appeals, issued December 15, 2005 (Docket No. 262590) (*Myers I*).

ity to file the instant action here and, in *Myers I*, the plaintiff lacked authority. Thus, in the *Myers* cases, it was as if the first action had never been filed. The question remained, however, whether the second personal representative could file suit given her date of appointment, and the panel held that under *Eggleston* she could, rejecting the very distinctions the *Rheinschmidt* defendants had sought to draw.

In another group-two case, *Jackson v Henry Ford Health Sys*, unpublished opinion per curiam of the Court of Appeals, issued January 17, 2006 (Docket No. 263766),[7] the panel[8] made observations pertinent to the res judicata issue:

> It is true that under some circumstances "a summary disposition ruling is the procedural equivalent of a trial on the merits that bars relitigation on principles of res judicata." Here, however, the Wayne Circuit Court's ruling in Pickett's [the first personal representative] earlier cases did not address the merits of the underlying substantive claim. Most significantly, the Wayne Circuit Court *could not* have addressed the wrongful death claim, despite the fact that Pickett attempted to raise it, because the proceedings only addressed the issue of whether Pickett properly brought suit on behalf of the estate. Whether Debra Jackson has additional time during which she could bring suit presents a separate question that requires the application of different law to additional facts that Pickett could not have raised in his suits. Self-evidently, Debra Jackson had not been appointed successor until *after* the Wayne Circuit Court dismissed Pickett's suits. Accordingly, Pickett's earlier suits did not—and could not—resolve the matters to be contested in Wrongful Death Suit No. 4. Barring Wrongful Death Suit No. 4 would not fulfill the purposes of the res judicata doctrine: it would not prevent

---

[7] Application for leave to appeal held in abeyance pending decision in *Washington, supra*. See 717 Mich 339 (Mich, 2006).

[8] Chief Judge WHITBECK presided on this panel.

the litigation of the same cause of action because the cause of action was never, in fact, litigated. [*Jackson,* slip op at 7-8 (emphasis in original.]

These observations apply equally here. The instant suit was dismissed for the sole reason that the NOI was insufficient. This is not an adjudication on the merits. Further, the question whether a successor personal representative, who has not even been appointed, will himself or herself have two years in which to file suit, limited by the overall three-year limitation, is not properly presented and should not be litigated.

In *Mitchell-Crenshaw v Joe,* unpublished opinion per curiam of the Court of Appeals, issued February 7, 2006 (Docket No. 263057),[9] another group-two case, the initial personal representative was appointed a month after the decedent's death. She filed an NOI exactly two years after her appointment. Four months after filing the NOI, the personal representative's authority was terminated. Six months later, the estate was reopened and a successor personal representative was appointed. The successor personal representative sent another NOI within days of her appointment and filed suit six months later. The *Mitchell-Crenshaw* panel reversed the dismissal of the successor personal representative's malpractice claims, concluding that the claim was timely under *Eggleston*:

> In *Eggleston, supra,* a unanimous Supreme Court decided the case based solely on the statutory language of the wrongful death saving provision. The short decision . . . does not examine the reasons behind the appointment of a successor personal representative, as defendants urge us to do here.

---

[9] Application for leave to appeal held in abeyance pending decision in *Washington, supra.* See 720 NW2d 321 (Mich, 2006); 720 NW2d 322 (Mich, 2006).

* * *

Defendant asserts that *Eggleston* is distinguishable because the temporary personal representative died within two years of appointment and the successor was appointed within two years after the first representative was appointed. However, we fail to see the significance of these facts. In *Eggleston*, the successor representative was appointed more than two years after the decedent's death, and the complaint was filed more than two years after the initial appointment. Defendants' [sic] attempt to distinguish the instant case on the basis that the statute had run by the time the successor representative was appointed ignores that the statute is intended to permit an action even where the representative is appointed after the statute has run. The only constraint is that the action cannot be commenced more than three years after the statute of limitations has run. [*Mitchell-Crenshaw*, slip op at 4-6.]

It appears that *Mitchell-Crenshaw* might more accurately be classified as a group-one, rather than a group-two, case because the initial personal representative had authority to act. Her authority was simply terminated during the six-month notice period, and she never filed suit. The case seems similar to *Rheinschmidt* in this regard. What is significant is that in *Mitchell-Crenshaw*, the original personal representative's suit would have been time-barred had she brought it. As with *Rheinschmidt*, I see no reasoned basis to distinguish the cases simply because the suit that would have been time-barred in the hands of the initial personal representative was not actually filed and was only filed in the first instance by the successor representative, whose appointment was necessary to save the otherwise time-barred action. The instant case differs only in that first personal representative here actually brought suit using the deficient NOI.

The third group of cases encompasses those in which "a successor personal representative did not attempt to file a new action but attempts instead to revive or reinstate a previously filed untimely action[.]" *Post* at 652-653. Indeed, these cases are distinguishable on the ground that while the successor personal representative has a right to begin anew, there is nothing to indicate that he or she can revive the prior representative's untimely action, which is what was attempted in those cases. Here no successor personal representative had been appointed, and the issue is simply whether the dismissal should be with prejudice.

The fourth group is described as those cases in which "a successor personal representative attempts to file a new action to overcome a predecessor's filing of an untimely action." *Post* at 653. The instant case is a group-four case. As explained previously, I find no grounds for distinguishing this group from group one. In *King v Briggs,* unpublished opinion per curiam of the Court of Appeals, issued July 12, 2005 (Docket Nos. 259136 and 259229), it is unclear whether the plaintiff was the initial personal representative or a successor personal representative seeking to save an untimely suit with his appointment. It appears that the successor representative had already been appointed and was required by the court to substitute in the initial action.

Another group-four case, *Young v Spectrum Health-Reed City Campus,* unpublished opinion per curiam of the Court of Appeals, issued May 18, 2006 (Docket No. 259644), distinguished *Eggleston* solely on the basis that "[u]nlike the plaintiff in *Eggleston,* insufficient additional time remained after observance of the tolling provision. The *Eggleston* rule is inapplicable under these circumstances."[10] It appears from this terse statement that *Young* distinguished *Eggleston* on the basis

---

[10] *Young,* slip op at 3, citing *McLean,* 269 Mich App at 201-202.

that the statute had already run on the predecessor's complaint, a fact that is present, however, in the group-one cases cited.

Finally, there is *McLean.* In *McLean,* the circuit court's refusal to permit a voluntary dismissal without prejudice so that a new personal representative could be appointed to file suit was affirmed under an abuse of discretion standard. The *McLean* panel rejected plaintiff's reliance on *Eggleston* on the basis that in *Eggleston* the estate was represented for a total of 10½ months rather than two years, and the predecessor personal representative had died. I conclude that the many cases, including *Verbrugghe, Rheinschmidt,* and *Mitchell-Crenshaw,* that declined to distinguish *Eggleston* on this basis were correctly decided. The *Eggleston* holding is based on the statutory language, which does not contemplate these distinctions.

The *McLean* Court additionally determined that a dismissal without prejudice would have been inappropriate because such a dismissal would legally prejudice the defendants:

> An order granting summary disposition is an adjudication on the merits. *Capital Mortgage Corp v Coopers & Lybrand,* 142 Mich App 531, 536; 369 NW2d 922 (1985). Here, defendants were entitled to summary disposition because plaintiffs failed to file their claim within the period established by the Legislature. Thus, defendants were entitled to a judgment on the merits that would bar relitigation under the doctrine of res judicata. *Id.* If plaintiffs' request for dismissal without prejudice had been granted, defendants would conceivably have been subject to the relitigation of plaintiffs' claim if a new personal representative was appointed to act on behalf of Karen's estate. Being subject to a second suit that would otherwise be barred under the doctrine of res judicata would be legally prejudicial to defendants. Accordingly, we conclude that the trial court did not abuse its discretion by denying

plaintiffs' request for dismissal without prejudice. [*McLean*, 269 Mich App at 202-203.]

I do not agree with the *McLean* Court's reliance on *Capital Mortgage* for the proposition that the dismissal of the McLeans' action as untimely under *Waltz* was an adjudication on the merits. In *Capital Mortgage*, the Court determined that the defendant waived its right to arbitrate when it filed its motion for summary judgment. The Court stated that "[t]he rationale for this rule is that summary judgment is the procedural equivalent of a trial and is a judgment on the merits which bars relitigation on principles of res judicata." *Capital Mortgage*, 142 Mich App at 536. When summary disposition is granted on substantive grounds, it is, indeed, the procedural equivalent of a trial on the merits. However, a motion granted on procedural defects does not decide the merits of the case. No one questions that had plaintiff sent another, adequate NOI and filed a timely action thereafter, the earlier dismissal would not have been a bar to the subsequent action. *Dorris*, 460 Mich at 47.

The pertinent issue actually litigated and decided here is whether the NOI was sufficient. With respect to the corporate defendants, we affirm the determination that it was not. Under *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679; 684 NW2d 711 (2004), that determination amounts to a determination that the action was not timely with respect to those defendants. It is a separate question whether the dismissal should have been with prejudice. The failure to provide an adequate NOI is a procedural failure that does not in itself lead to a dismissal with prejudice. *Dorris*, 460 Mich at 47. It is only when another factor makes it impossible to save the action that the dismissal, which would normally be without prejudice, is entered with

prejudice. *Roberts, supra* at 701-702. If there is still time within which a potential successor personal representative might file suit in compliance with the requirements of the NOI provisions, *Waltz,* and MCL 600.5852, a dismissal for reasons other than the merits should be entered without prejudice, and the question whether a subsequent suit is timely should be addressed in that action.

In sum, I find no meaningful distinction between the cases in which it is agreed that the successor personal representatives are entitled to two years in which to file suit and the instant case. In those cases, the personal representatives had a full two years of authority in which to file suit and failed to do so. The successor personal representatives were permitted to revive the claims following their appointment. The fact that the first personal representatives did not file the untimely claims in those cases should not make a difference if the claims were barred. Clearly, those estates were given the very same "second bite at the apple" that *McLean* and the dissent here find unwarranted. *Post* at 664. The second bite is granted by the Legislature without limitation, until three years have passed from the running of the period of limitations. At that point, all authority to file claims ceases. Up until that point, as long as there is no adjudication on the merits, successive personal representatives may cure procedural defects. Most likely, this legislative approach is in recognition of the representative capacity in which a personal representative serves and the fact that a representative who fails to diligently pursue the rights of an estate negatively affects the rights of others. In any event, I conclude that *Eggleston* holds that any successor representative would be entitled to a separate two-year period and that res judicata does not require that the action be dismissed with prejudice.

Whitbeck, C.J. *(concurring in part and dissenting in part)*.

### I. OVERVIEW

I agree with the majority's conclusion that the notice of intent was sufficient with respect to the claims against Dr. Michael Andrew Lauer. I also agree with the majority's conclusion that the notice of intent was deficient with respect to the claims against Borgess Medical Center and Heart Center for Excellence, P.C., for failure to comply with MCL 600.2912b. Hence, I agree with the majority's decision to affirm the trial court's dismissal of the claims against Borgess Medical Center and Heart Center for Excellence, P.C., with prejudice.

I do not agree, however, with the majority's conclusion that dismissal with respect to the latter two defendants *should* be *without* prejudice. I write separately because I believe that *McLean v McElhaney*[1] was correctly decided and that dismissal in this case *should* be *with* prejudice, thus barring a successor personal representative from filing a new action on behalf of the estate. I would declare a conflict with *Verbrugghe v Select Specialty Hosp-Macomb Co, Inc*.[2]

### II. DISMISSAL: WITH OR WITHOUT PREJUDICE?

#### A. OVERVIEW

Boodt failed to set forth a statement of the factual basis for the claims against Borgess Medical Center and Heart Center for Excellence. With respect to them, the notice of intent was therefore defective. And, because it

---

[1] *McLean v McElhaney*, 269 Mich App 196; 711 NW2d 775 (2005).

[2] *Verbrugghe v Select Specialty Hosp-Macomb Co, Inc*, 270 Mich App 383; 715 NW2d 72 (2006).

was defective, Boodt failed to give proper notice. Absent proper notice, Boodt's filing of her complaint was ineffective, the period of limitations was not thereby tolled,[3] and the period of limitations subsequently expired without a proper notice of intent being filed. After the period of limitations runs, a plaintiff is no longer in a position to be able to correct the error by filing a new notice of intent and commencing a new action. Thus, the only practical remedy is dismissal with prejudice.[4] Accordingly, the appropriate remedy here is to dismiss the action with prejudice. However, Boodt argues that the trial court erred in dismissing the case with preju-

[3] MCL 600.2912b(1); MCL 600.5856(c); *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 681, 684, 686; 684 NW2d 711 (2004).

[4] See *Roberts v Mecosta Co Gen Hosp*, 240 Mich App 175, 184; 610 NW2d 285 (2000), rev'd and remanded 466 Mich 57 (2002); *Roberts v Mecosta Co Gen Hosp (On Remand)*, 252 Mich App 664; 653 NW2d 441 (2002), rev'd *Roberts (After Remand)*, *supra* at 702 (reinstating the trial court's dismissal with prejudice).

This conclusion is in keeping with rulings addressing affidavits of merit. "When a plaintiff fails to comply with the affidavit of merit requirement but the limitation period has not yet expired, dismissal of the complaint without prejudice may constitute an appropriate remedy, leaving the plaintiff free to refile the complaint together with an affidavit of merit." *Holmes v Michigan Capital Med Ctr*, 242 Mich App 703, 706; 620 NW2d 319 (2000). "If the claim is time-barred, however, the complaint should be dismissed with prejudice." *Id.* at 706-707. See also *Young v Spectrum Health-Reed City Campus,* unpublished opinion per curiam of the Court of Appeals, issued May 18, 2006 (Docket No. 259644), slip op at 3:

Plaintiff finally argues that this case should not be dismissed with prejudice. We disagree. Plaintiff first argues that compliance with MCL 600.2912b is only necessary to toll the limitations period for 18[2] days under MCL 600.5856(c), which was unnecessary here because she timely filed her complaint even without applying the notice-tolling period. This is irrelevant: "a person *shall not commence* an action alleging medical malpractice" without complying with MCL 600.2912b. Plaintiff's noncompliance precluded her from commencing this action at all. [Citation omitted.]

dice. She asserts that her successor personal representative, Andrew Waltz, who was appointed on May 24, 2005, had until October 6, 2006, the expiration of the wrongful death saving statute three-year ceiling,[5] to file an action.

### B. FACTUAL FRAMEWORK: THE FOUR CATEGORIES

There are actually four different situations in which a successor personal representative's ability to pursue an action has been questioned: (1) when a successor personal representative attempts to file an action because the predecessor personal representative never filed an action;[6] (2) when a successor personal representative attempts to file an action when a predecessor tried to file an action but was not authorized to do so;[7] (3) when a successor personal representative did not attempt to file a new action but attempts instead to

---

[5] MCL 600.5852 states:

> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action which survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run. But an action shall not be brought under this provision unless the personal representative commences it within 3 years after the period of limitations has run.

[6] *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29; 658 NW2d 139 (2003); *Rheinschmidt v Falkenberg*, unpublished opinion per curiam of the Court of Appeals, issued March 30, 2006 (Docket No. 261318), application for leave held in abeyance 721 NW2d 220 (Mich, 2006).

[7] *Myers v Marshall Med Assoc, PC*, unpublished opinion per curiam of the Court of Appeals, issued March 23, 2006 (Docket No. 264667), application for leave held in abeyance 720 NW2d 298 (Mich, 2006); *Mitchell-Crenshaw v Joe*, unpublished opinion per curiam of the Court of Appeals, issued February 7, 2006 (Docket No. 263057), application for leave held in abeyance 720 NW2d 321 (Mich, 2006), and 720 NW2d 322 (Mich, 2006); *Jackson v Henry Ford Health Sys*, unpublished opinion per curiam of the Court of Appeals, issued January 17, 2006 (Docket No. 263766), application for leave held in abeyance 717 NW2d 339 (Mich, 2006).

revive or reinstate a previously filed untimely action;[8] and (4) when a successor personal representative attempts to file a new action to overcome a predecessor's filing of an untimely action.[9]

(1) THE FIRST CATEGORY: ORIGINAL PERSONAL
REPRESENTATIVE FILES NO ACTION; SUCCESSOR
PERSONAL REPRESENTATIVE ATTEMPTS TO FILE ACTION

With respect to the first category, the controlling case is clearly the Michigan Supreme Court's decision in *Eggleston*. In my opinion, the clear rule of that case is that if a successor personal representative attempts to file an action and the predecessor never filed an action, the successor personal representative may utilize his or her own saving period. And, under MCL 600.5852, that saving period commences with the issuance of his or her letters of authority. The rationale for this interpretation is that administration of the estate should not be forfeited simply because the original personal representative was unable to perform his or her duties, necessitating the appointment of a new personal representative.[10]

---

[8] *Mullins v St Joseph Mercy Hosp*, 269 Mich App 586; 711 NW2d 448, aff'd in part 271 Mich App 503 (2006); *McMiddleton v Bolling*, 267 Mich App 667; 705 NW2d 720 (2005); *Long v Goodson*, unpublished opinion per curiam of the Court of Appeals, issued April 18, 2006 (Docket Nos. 261049, 261050, 261051, and 261052); *Amon v Botsford Gen Hosp*, unpublished opinion per curiam of the Court of Appeals, issued December 27, 2005 (Docket No. 260252); *Washington v Jackson*, unpublished opinion per curiam of the Court of Appeals, issued December 13, 2005 (Docket No. 263108).

[9] *Mili v Tendercare Michigan, Inc* (*On Reconsideration*), unpublished opinion per curiam of the Court of Appeals, issued September 26, 2006 (Docket No. 265824); *Verbrugghe, supra*; *McLean, supra*; *Young, supra*; *King v Briggs*, unpublished opinion per curiam of the Court of Appeals, issued July 12, 2005 (Docket Nos. 259136 and 259229).

[10] See MCL 700.3613 ("[T]he successor personal representative has the powers and duties in respect to the continued administration that the former personal representative would have had if the appointment had not been terminated.").

(2) THE SECOND CATEGORY: ORIGINAL PERSONAL
REPRESENTATIVE ATTEMPTED TO FILE ACTION,
BUT WAS NOT AUTHORIZED; SUCCESSOR PERSONAL
REPRESENTATIVE ATTEMPTS TO FILE ACTION

Turning to the second category, although the three relevant cases are unpublished, each consistently holds that when the predecessor personal representative attempted to file an action but was not authorized to do so, an authorized successor personal representative is entitled to his or her own saving period. This saving period commenced upon the issuance of his or her letters of authority. The rationale for these cases is that a filing by an unauthorized personal representative is equivalent to no filing at all, and an authorized successor personal representative should be entitled to an opportunity to file the action.

(3) THE THIRD CATEGORY: ORIGINAL PERSONAL
REPRESENTATIVE FILES UNTIMELY ACTION; SUCCESSOR
PERSONAL REPRESENTATIVE ATTEMPTS TO REVIVE
OR REINSTATE THE UNTIMELY ACTION

While the first two categories allow a successor personal representative to file an action, the third category presents a clear limitation on the successor's ability to pursue an action on behalf of the estate. In this category, the lead published decision is *McMiddleton v Bolling*. That case held that a successor personal representative cannot rely on or revive an untimely action that was filed before his or her appointment because there would be no benefit to ratifying an untimely action under MCL 700.3701.[11] *Mullins v St Joseph Mercy Hosp*, also a published opinion, reached the same conclusion, explaining that the mere appointment of a successor personal representative did not transform the previ-

---

[11] *McMiddleton, supra* at 671-674.

ously filed untimely action into a timely one.[12]

### (4) THE FOURTH CATEGORY: ORIGINAL PERSONAL REPRESENTATIVE FILES UNTIMELY ACTION; SUCCESSOR PERSONAL REPRESENTATIVE ATTEMPTS TO FILE NEW ACTION TO OVERCOME UNTIMELY ACTION

Regarding the last category, which includes the situation here, the case law is not as consistent. In this situation—in which a successor personal representative attempts to file a new action to overcome a predecessor's filing of an untimely action—there is an apparent conflict between two published opinions: *McLean* and *Verbrugghe*. The *McLean* panel held that a dismissal without prejudice was not warranted to allow a successor personal representative to file a new action. The *McLean* panel reasoned that the successor could not file an action of his or her own (although the three-year ceiling had not yet expired) given that the predecessor representative had negligently failed to file a timely action. Addressing the same factual circumstances, however, the *Verbrugghe* panel did not apply *McLean*. Rather, the *Verbrugghe* panel instead held that under *Eggleston* and the plain language of MCL 600.5852, a successor personal representative *could* file a new action with the specific purpose of overcoming a predecessor's filing of an untimely action.

### C. CASES RELEVANT TO THE PRESENT ACTION

#### (1) *EGGLESTON*

In *Eggleston*, the decedent's widower was appointed temporary personal representative, but he died several months later without having filed an action. The decedent's son was appointed successor personal represen-

---

[12] *Mullins, supra,* 269 Mich App at 591.

tative. Interpreting the plain language of the wrongful
death saving statute, the Michigan Supreme Court held
that the successor personal representative had two
years after issuance of *his* letters of authority, rather
than the issuance of the deceased personal representa-
tive's letters of authority, to file an action on behalf of
the estate.[13] The fact that the successor personal repre-
sentative met the MCL 600.5852 time requirements
was the dispositive fact on which the *Eggleston* Court
relied to hold that the action was timely filed. However,
the *Eggleston* Court did not, as the lead opinion con-
tends, hold that "*every* personal representative is en-
titled to two years after receipt of his or her letters of
authority within which to file a complaint, *irrespective
of any predecessors.*"[14] Indeed, the absence of such a
ruling was the basis on which the *McLean* panel was
able to recognize the dispositive factual distinction
between the facts on which it ruled and the facts in
*Eggleston.*

### (2) *McLEAN*

The *McLean* panel concluded that the plaintiffs'
action was untimely because it was filed outside both
the period of limitations and the saving period.[15] Appar-
ently anticipating this disposition, the plaintiffs as-
serted alternatively "that the trial court should have
permitted a voluntary dismissal of plaintiffs' claims
without prejudice so that a new personal representative
could have been appointed to file suit . . . ."[16] Distin-
guishing the facts at hand from those of *Eggleston*, the
*McLean* panel noted that "neither the initial nor the

---

[13] *Eggleston, supra* at 33.

[14] *Ante* at 636 (emphasis added).

[15] *McLean, supra* at 199-200.

[16] *Id.* at 201.

successor representative [in *Eggleston*] represented the estate for the full two years available to him under the wrongful death saving statute."[17] "Contrarily, [the *McLean*] plaintiffs were afforded the full two years permitted under the wrongful death saving statute to file their complaint, but failed to do so."[18] The *McLean* panel further noted that the plaintiffs' failure to timely file was due to "their own negligence in calculating the proper time for filing the complaint" as opposed to "the untimely demise of a predecessor representative . . . ."[19] The *McLean* panel concluded that the plaintiffs were therefore "not entitled to relief under *Eggleston*."[20]

In a similar case, *King v Briggs*, a panel of this Court concluded that the personal representative's action was untimely, having been filed outside both the period of limitations and the saving period.[21] The *King* panel then went on to address "whether a successor personal representative of the estate would have an additional two years from the date of his letters of authority to file suit under MCL 600.5852 . . . ."[22] In answering this question, the *King* panel distinguished the facts at hand from those of *Eggleston*, specifically noting that "in *Eggleston*, the temporary personal representative never filed suit, while the predecessor personal representative in the instant case did."[23] Thus, the *King* panel stated that the issue was really "whether a personal representative who fails to diligently pursue a malpractice cause

---

[17] *Id.* at 202.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *King, supra,* slip op at 2. Although not binding, MCR 7.215(C)(1), I view this case as decidedly persuasive.

[22] *King, supra,* slip op at 2.

[23] *Id.*

of action on behalf of an estate within the allotted time may nonetheless save *the action from dismissal by substituting another personal representative.*"[24] The *King* panel then found MCL 700.3613 dispositive. MCL 700.3613 "states that a successor personal representative 'must be substituted in all actions and proceedings in which the former personal representative was a party.' "[25] The *King* panel held that the successor personal representative would be substituted in the action already filed and would not have the additional two years under the wrongful death saving statute to pursue an action.[26] Thus, under the rationale of *King*, the successor personal representative inherits the same untimely status as the previous personal representative.

### (3) *VERBRUGGHE*

In *Verbrugghe*, a panel of this Court again addressed a successor personal representative's ability to file a new action after a predecessor's untimely filing. The *Verbrugghe* panel found it significant that the *Eggleston* Court relied solely on the plain language of the statute.[27] The *Verbrugghe* panel concluded that, under the plain language of the wrongful death saving statute, there are only two limitations on a successor personal representative's ability to exercise the saving provision: the death of the decedent during the limitations period and the successor's receiving letters of authority.[28] Therefore, according to the *Verbrugghe* panel, once

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Verbrugghe, supra* at 389.

[28] *Id.* at 389-390.

letters of authority are issued, the successor personal representative need only comply with the saving-statute time limits.[29]

The *Verbrugghe* panel acknowledged that its holding gave the successor personal representative "a second bite of the apple. But . . . the predicament lies within the statute . . . ."[30] The *Verbrugghe* panel stated that, if necessary, the Legislature would be the proper body to correct this result.[31]

### D. SUCCESSOR PERSONAL REPRESENTATIVE ATTEMPTS TO FILE NEW ACTION TO OVERCOME PREDECESSOR'S UNTIMELY ACTION: *McLEAN* VERSUS *VERBRUGGHE*

I first emphasize that *McLean* is a published opinion that was released in 2005. Thus, subsequent panels, like *Verbrugghe*, were bound to follow its ruling,[32] absent some distinguishing factor. In presumed recognition of this rule, the *Verbrugghe* panel attempted to distinguish *McLean*. I believe, however, that the *Verbrugghe* panel's attempt to do so was without merit.

The *Verbrugghe* panel stated: "[U]nlike *McLean v McElhaney*, . . . we do not believe the facts in this case allow us to avoid applying the plain language of this statute as enforced in *Eggleston*. Thus, because *McLean* did not apply *Eggleston*, we find that *McLean* provides us no useful guidance."[33] The *Verbrugghe* panel, like the majority here, apparently concluded that *McLean* was not binding because it failed to follow the Supreme Court precedent of *Eggleston*.

---

[29] *Id.* at 391.

[30] *Id.*

[31] *Id.* at 391-392.

[32] MCR 7.215(J).

[33] *Verbrugghe, supra* at 389.

However, the *McLean* panel was not bound to follow a rule that it considered inapplicable to the facts at hand. That is, the *McLean* panel recognized that the *Eggleston* rule did *not* cover the broad scope of cases to which the majority would have it apply—"every personal representative . . . , irrespective of any predecessors."[34] The *Eggleston* rule came in the context of a particular set of circumstances that did not, and could not, contemplate the relevant facts in cases like *McLean, King,* and the case here. *Eggleston* was distinguishable because in that case the initial personal representative had not filed an action and, because of his death, could not be described as having failed to diligently pursue the cause of action. Further, *Eggleston* did not address the ramifications of MCL 700.3613: given that the deceased personal representative never filed an action before he died, there was no prior action in which to substitute the successor personal representative.

The *Verbrugghe* panel may have concluded that there was some relevant factual distinction between the facts of that case and those of *McLean*. But I fail to comprehend what that distinction might be. In both *McLean* and *Verbrugghe,* the predecessors' actions were untimely because they were filed outside both the period of limitations and the saving period. In both cases, the estate sought to file a new action through use of a successor personal representative. In both cases, the plaintiffs relied on *Eggleston* to argue that the successor personal representative should be able to file a new action under his or her saving period. And in both cases, the panels recognized that the pertinent issue was whether *Eggleston* allowed the filing of a new action.

---

[34] *Ante* at 636. See the discussion in part II(B) of this opinion.

The only distinguishing factor that I can discern is the fact that the *Verbrugghe* appeal was brought by the successor personal representative who had filed a new action. In contrast, the *McLean* appeal was brought by the original personal representatives, who argued that a successor should be allowed to file a new action. Even if this is indeed a relevant distinguishing factor, I conclude that this panel is unquestionably bound to follow *McLean* because, here, the successor personal representative has yet to file a new action. In my opinion, however, there is no actual relevant factor distinguishing the facts of this case and *McLean* or *Verbrugghe*. Once again, I conclude that under the facts here, this panel is bound to follow *McLean*.

Simply put, the *Verbrugghe* panel was faced with the same relevant facts as the *McLean* panel. Yet the *Verbrugghe* panel disagreed with the *McLean* panel's reading of *Eggleston*. In my view, this was not the correct procedure; either the rules regarding precedent and the conflict rules mean something or they do not. In my view, the *Verbrugghe* panel should have declared a conflict with *McLean*, rather than ignoring *McLean*'s binding precedence.

The majority here concedes that *McLean* is binding because, under our court rules, "[w]hen a panel is confronted with two conflicting opinions published after November 1, 1990, the panel is obligated to follow the first opinion issued."[35] Thus, because *McLean* and *Verbrugghe* are conflicting, and *McLean* was issued first, the panel here is obligated to follow *McLean*.

Further, not only is *McLean* binding under the court rule, I believe that *McLean* did in fact reach the correct holding. The *Verbrugghe* panel resolved the issue by

---

[35] *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 473; 556 NW2d 517 (1996).

interpreting the plain language of the wrongful death saving statute *alone*. By contrast, I believe reading that statute *together with* MCL 700.3613 compels the result reached in *McLean* and *King*. "The saving provision of the statute of limitations and the Probate Code are intended to work together to preserve legal actions that survive death and to define the running of the statute of limitations where a person dies before or within thirty days of the running of the period of limitation."[36]

The *Verbrugghe* panel considered the application of MCL 700.3613, but dismissed that provision. The panel stated that while MCL 700.3613 "has procedural implications for the successor personal representative, it does not . . . preclude her from initiating a separate action."[37] Although this is technically true, under MCL 700.3613, the successor personal representative must inherit the predecessor's status. And substitution into an untimely action would be futile. Additionally, despite the majority's attempt here to discount MCL 700.3613, in my opinion, the *McLean* approach best harmonizes the statutory provisions.[38]

### E. RESOLUTION OF THE PRESENT ACTION

As mentioned, this action falls under the last of the four different categories in which a successor personal representative's ability to pursue an action is in question: when a successor personal representative attempts to file a new action to overcome a predecessor's filing of an untimely action. The period of limitations

---

[36] *Lindsey v Harper Hosp*, 455 Mich 56, 65; 564 NW2d 861 (1997).

[37] *Verbrugghe, supra* at 392.

[38] See *Lindsey, supra* at 65 ("Under the rule of construction of statutes in pari materia, it is appropriate to harmonize statutory provisions that serve a common purpose when attempting to discern the intent of the Legislature.").

has expired, precluding Boodt from filing a new notice of intent. A dismissal with prejudice is therefore required. Accordingly the successor personal representative, Andrew Waltz, should be barred from filing a new action because his predecessor representative already failed to diligently pursue an action when she filed a defective notice of intent and allowed the period of limitations to expire.[39]

### III. STATUTORY REVISIONS

I believe that this case provides yet another example of "the continuing difficulties presented by recent developments in medical malpractice law."[40] As Judge NEFF aptly stated in *Braverman v Garden City Hosp*, "Given the intricacies of the statutory scheme and the nuances of cases interpreting those decisions, this area of medical malpractice law is fraught with peril for even the most careful practitioner."[41] Thus, I echo her call for "the Legislature to consider revisions to the statutory scheme that would provide litigants and the courts with clear guidance to carry out the Legislature's intent in this area of law."[42]

### IV. CONCLUSION

In sum, in a wrongful death malpractice action, a personal representative is generally entitled to a saving period.[43] This saving period operates to suspend the

---

[39] MCL 700.3613; *McLean, supra* at 201-203; *King, supra*; *Young, supra*.

[40] *Braverman v Garden City Hosp*, 272 Mich App 72, 88; 724 NW2d 285 (2006), vacated in part 272 Mich App 801 (2006).

[41] *Id.*

[42] *Id.*

[43] MCL 600.5852.

running of the period of limitations until a personal representative is authorized to represent the estate.[44] In *Eggleston,* the Michigan Supreme Court made clear that the saving provision could be applied to successor personal representatives. However, I do not agree that the *Eggleston* ruling extends as far as the majority here and the *Verbrugghe* panel would have it extend. In short, I do not agree that the Legislature or the *Eggleston* Court intended to give every successor personal representative a second bite at the apple. As the Michigan Supreme Court has also made clear: "Statutes of limitation serve to protect defendants from stale claims. This purpose must be balanced with the purpose of exceptions to statutes of limitation, such as the saving provision. The saving provision preserves a plaintiff's claim, but, as an exception to a statute of limitation, must be narrowly construed."[45] Thus, in my opinion, recognition of the four categories outlined earlier serves best to both construe the saving provision narrowly and to harmonize that provision with the Probate Code. Accordingly, I would conclude that if a predecessor personal representative files an untimely action on behalf of the estate, a successor personal representative steps into the shoes of the former and is time-barred from bringing a stale claim.

---

[44] *Lindsey, supra* at 61.

[45] *Id.* at 69.