BUSH v SHABAHANG

Docket Nos: 274708, 274709, and 274726. Submitted March 5, 2008, at
Grand Rapids. Decided May 1, 2008, at 9:00 a.m. Leave to appeal
sought.

Gary L. Bush, as guardian of Gary E. Bush, a protected person,
brought a medical-malpractice action in the Kent Circuit Court
against Behrooz-Bruce Shabahang, M.D., and others, seeking
damages for injuries allegedly suffered by Gary E. Bush as a result
of surgery to repair an aortic aneurysm. The court, George S.
Buth, J., granted summary disposition in favor of defendants
George T. Sugiyama, M.D., M. Ashraf Mansour, M.D., and Vascular
Associates, P.C. The court also granted summary disposition in
favor of defendant Spectrum Health Butterworth Campus, to the
extent that its alleged liability was based on the actions of
Sugiyama and Mansour and with regard to the claims of negli-
gence on the part of Spectrum Health's physician assistants.
Summary disposition was denied with regard to the other defen-
dants. The court also determined that the complaint was not
prematurely filed. The Court of Appeals denied applications for
leave to appeal by Shabahang, Heiser, West Michigan Cardiovas-
cular, and Spectrum Health in unpublished orders entered August
4, 2006 (Docket Nos. 270433, 270437, and 270897). The Supreme
Court, in lieu of granting leave to appeal, remanded the matter to
the Court of Appeals for consideration as on leave granted. 477
Mich 934 and 935 (2006). The appeals were consolidated.

The Court of Appeals *held*:

1. The plaintiff's notice of intent to file his action met the
minimum requirements of MCL 600.2912b for statements of the
standard of care and proximate cause with regard to defendants
Heiser and Shabahang and adequately gave notice that defendants
West Michigan Cardiovascular Surgeons and Spectrum Health
could be vicariously liable for the actions of defendants Heiser and
Shabahang. The trial court did not err in refusing to grant
summary disposition on the basis that the notice was deficient in
these regards. The notice did not meet the requirements of MCL
600.2912b to the extent that the plaintiff sought to hold West
Michigan Cardiovascular Surgeons and Spectrum Health directly
liable under a negligent-hiring or a failure-to-train theory and to

the extent that the plaintiff sought to hold Spectrum Health liable on the basis of the actions of its staff members other than defendants Heiser or Shabahang. The trial court should have granted summary disposition in favor of West Michigan Cardiovascular and Spectrum Health to the extent that the plaintiff's claims rely on direct-liability theories and to Spectrum Health to the extent that the plaintiff's claims arise from the actions of Spectrum Health's staff other than Heiser and Shabahang.

2. A plaintiff does not need to challenge the sufficiency of a defendant's response to the plaintiff's notice of intent to file a medical-malpractice action before the plaintiff may properly choose to commence the action after the expiration of the 154-day period specified in MCL 600.2912b(8) in reliance on the plaintiff's belief that the defendant's response did not meet the requirements of MCL 600.2912b(7). A plaintiff who commences an action after the expiration of the 154-day period, but before the expiration of the 182-day period provided under MCL 600.2912b(1), on the basis of a belief that the defendant's response did not meet the requirements of MCL 600.2912b(7) risks dismissal of the suit if the trial court later determines that the defendant's response was adequate. The trial court did not err in concluding that the plaintiff's complaint was not prematurely filed.

Affirmed in part, reversed in part, and remanded for the entry of partial summary disposition without prejudice in favor of West Michigan Cardiovascular and Spectrum Health.

FITZGERALD, P.J., concurring in part and dissenting in part, dissented from the majority's conclusion that the plaintiff could unilaterally determine that the defendants' response did not satisfy the statutory requirements and thus relieved the plaintiff of the obligation under MCL 600.2912b(1) to wait 182 days after filing the notice of intent to bring an action before filing the complaint. Because the plaintiff received the defendants' response within 154 days after providing the notice of intent to the defendants, the shortened 154-day period provided in MCL 600.2912b(8) does not apply, irrespective of whether the defendants' response satisfied the detailed requirements of MCL 600.2912b(7).

1. ACTIONS — MEDICAL MALPRACTICE — NOTICE OF INTENT TO FILE CLAIM.

A plaintiff's notice of intent to file a medical-malpractice action need only meet the level of specificity generally required of a medical-malpractice complaint; a particular format for the statements in the notice is not required and the required statements need only be present in some readily decipherable form; the relevant inquiry

is whether the notice, when read as a whole, contains the required information, not whether any specific portion of the notice contains the required information (MCL 600.2912b[1] and [4]).

2. ACTIONS — MEDICAL MALPRACTICE — LIMITATION OF ACTIONS.

A plaintiff need not challenge the sufficiency of a defendant's response to the plaintiff's notice of intent to file a medical-malpractice action before the plaintiff, in reliance on the belief that the response does not meet the statutory requirements for a response, commences the action after the expiration of the 154-day period following the defendant's receipt of the notice; however, the plaintiff risks dismissal of the action if the trial court subsequently determines that the defendant's response was adequate (MCL 600.2912b[1], [7], and [8]).

*Evans, Pletkovic & Rhodes, P.C.* (by *Sandra L. Ganos*), for Gary L. Bush.

*Hackney, Grover, Hoover & Bean, PLC* (by *Richard K. Grover, Jr.*, and *Thomas C. Kates*), for Behrooz-Bruce Shabahang, M.D.

*Aardema, Whitelaw & Sears-Ewald* (by *Brian W. Whitelaw* and *Timothy P. Buchalski*) for John C. Heiser, M.D., and West Michigan Cardiovascular Surgeons.

*Rhoades McKee* (by *Mark E. Fatum* and *Douglas P. Vanden Berge*) for Spectrum Health Butterworth Campus.

Before: FITZGERALD, P.J., and SMOLENSKI and BECKERING, JJ.

SMOLENSKI, J. In this medical-malpractice case, defendant Behrooz-Bruce Shabahang, M.D., appeals by leave granted the trial court's April 28, 2006, order denying his motion for summary disposition that was based on the grounds that plaintiff's notice of intent to sue was deficient and that plaintiff prematurely filed suit. Defendants John Charles Heiser, M.D., and West Michigan

Cardiovascular Surgeons (WM Cardiovascular), and, in a separate appeal, defendant Spectrum Health Butterworth Campus also appeal by leave granted the trial court's April 28, 2006, order denying their motions for summary disposition that were based on the ground that plaintiff's notice was deficient.[1] The appeals were consolidated. Because we conclude that plaintiff's notice did not meet the minimum requirements of MCL 600.2912b(4) with respect to the imposition of direct liability against WM Cardiovascular and for the nursing and physician assistants of Spectrum Health, we reverse in part the decision of the trial court. However, because defendants have failed to demonstrate that the notice was otherwise deficient and plaintiff did not prematurely file suit in contravention of MCL 600.2912b, we affirm the trial court's denial of summary disposition in all other respects.

I. FACTS AND PROCEDURAL HISTORY

On August 7, 2003, Gary E. Bush (Bush), who was 33 at the time, had surgery to repair an aortic aneurysm at Spectrum Health's Butterworth Campus. Shabahang

---

[1] This Court originally denied defendants' requests for leave to appeal. See *Bush v Behrooz-Bruce Shabahang, MD*, unpublished order of the Court of Appeals, entered August 4, 2006 (Docket No. 270433); *Bush v Behrooz-Bruce Shabahang, MD*, unpublished order of the Court of Appeals, entered August 4, 2006 (Docket No. 270437); *Bush v Behrooz-Bruce Shabahang, MD*, unpublished order of the Court of Appeals, entered August 4, 2006 (Docket No. 270897). However, in lieu of granting leave to appeal, our Supreme Court remanded these appeals for consideration as if on leave granted. See *Bush v Heiser*, 477 Mich 934 (2006); *Bush v Shabahang*, 477 Mich 934 (2006); *Bush v Spectrum Health Butterworth Campus*, 477 Mich 935 (2006). On remand from our Supreme Court, the appeals were assigned new docket numbers and were consolidated. See *Bush v Behrooz-Bruce Shabahang, MD*, unpublished order of the Court of Appeals, entered December 21, 2006 (Docket Nos. 274708, 274709, and 274726).

and Heiser, who are surgeons employed by WM Cardiovascular, performed the surgery. Plaintiff, Bush's guardian, claims that when Shabahang cut open Bush's chest, he lacerated the aneurysm, which made it necessary for Heiser to cannulate Bush's femoral artery and femoral vein so that Bush could be placed on a heart-bypass machine before the surgery could proceed. Defendants George T. Sugiyama, M.D., and M. Ashraf Mansour, M.D., who are vascular surgeons with defendant Vascular Associates, P.C., repaired Bush's femoral artery and femoral vein, respectively. According to plaintiff, the injuries Bush suffered during the surgery and during his recovery rendered him unable to lead an independent life.

On August 5, 2005, which was just days before the expiration of the applicable period of limitations, plaintiff served a notice of intent to file a medical-malpractice complaint against Shabahang, Heiser, Sugiyama, Mansour, WM Cardiovascular, Vascular Associates, and Spectrum Health. Sugiyama, Mansour, Vascular Associates, and Shabahang responded to plaintiff's notice as required by MCL 600.2912b(7). On January 27, 2006, which was 175 days after plaintiff served notice on defendants, plaintiff filed his complaint against all defendants.

Shortly thereafter, Sugiyama, Mansour, and Vascular Associates moved for summary disposition under MCR 2.116(C)(7), (8), and (10). They argued that dismissal was appropriate on two grounds: (1) plaintiff failed to file a notice that complied with the requirements of MCL 600.2912b, and (2) plaintiff failed to wait the required 182 days before filing his complaint. Shabahang, Heiser, and WM Cardiovascular joined the motion. Spectrum Health later filed its own motion for summary disposition based solely on the alleged deficiency of the notice.

In response to these motions, plaintiff argued that the notice met the minimum statutory requirements. Plaintiff responded to the allegations that the complaint was prematurely filed by arguing that the responses to the notice were deficient. Because defendants' responses to the notice were deficient, plaintiff contended that he could properly file his complaint after 154 days from the date of service of the notice. Hence, plaintiff concluded, his complaint was not prematurely filed.

The trial court determined that the notice was insufficient with regard to Sugiyama, Mansour, and Vascular Associates. On the basis of that conclusion, the trial court granted summary disposition in favor of Sugiyama, Mansour, and Vascular Associates.[2] The trial court also granted summary disposition in favor of Spectrum Health, but only to the extent that its alleged liability was based on the actions of Sugiyama and Mansour. The trial court also granted summary disposition in favor of Spectrum Health with regard to the claims of negligence on the part of Spectrum Health's physician assistants because plaintiff failed to file a conforming affidavit of merit. However, "[a]s to the other doctors and defendants . . . the Court's of the opinion that the [notice] is clearly sufficient, so those motions are denied." The trial court also determined that plaintiff's complaint was not prematurely filed.

The trial court entered an order reflecting its decision on April 28, 2006.

These appeals followed.

## II. SUFFICIENCY OF THE NOTICE

We shall first address defendants' various arguments that plaintiff's notice of intent to sue failed to satisfy

---

[2] The trial court's dismissal of these defendants is not at issue in the present appeals.

the requirements of MCL 600.2912b(4).[3]

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Boodt v Borgess Med Ctr*, 272 Mich App 621, 624-625; 728 NW2d 471 (2006). This issue also involves questions of statutory interpretation, which this Court reviews de novo. *Tousey v Brennan*, 275 Mich App 535, 538; 739 NW2d 128 (2007).

### B. NOTICE REQUIREMENTS OF MCL 600.2912b

Before commencing an action alleging medical malpractice against a health professional or health facility, a medical-malpractice claimant must provide each health professional and health facility written notice of intent to file a claim. MCL 600.2912b(1); see also *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 685; 684 NW2d 711 (2004). The notice must include several statutorily enumerated statements about the intended suit. See MCL 600.2912b(4). Dismissal is an appropriate remedy for noncompliance with the notice provisions of MCL 600.2912b. *Burton v Reed City Hosp Corp*, 471 Mich 745, 753; 691 NW2d 424 (2005). However, a notice is presumed valid until successfully challenged. *Potter v McCleary (On Remand)*, 278 Mich App 279, 286; 748 NW2d 599 (2008). Hence, even a deficient notice will toll the period of limitations during the notice period under MCL 600.5856(c). *Potter, supra* at 286. And, if the notice is successfully challenged, the remedy is dismissal without prejudice so that the plaintiff may have the opportunity to cure the

---

[3] On January 23, 2006, plaintiff served defendants with an amended notice. However, in an order entered on April 28, 2006, the trial court voided this amended notice. Because plaintiff has not challenged this order on appeal, we shall only consider the sufficiency of the August 5, 2005, notice.

deficiency within the unexpired portion of the period of limitations. *Id.*

Although the notice must include each of the statements enumerated under MCL 600.2912b(4), the claimant is not required to ensure that the statements are correct. *Boodt, supra* at 626. Rather, the claimant need only make "a good-faith effort to 'set forth [the information] with that degree of specificity which will put the potential defendants on notice as to the nature of the claim against them.' " *Id.*, quoting *Roberts, supra* at 701. For that reason, the notice need only meet the level of specificity generally required of a medical-malpractice complaint. *Boodt, supra* at 626-627. Further, MCL 600.2912b does not require a particular format for the statements in the notice; they need only be present in some "readily decipherable form . . . ." *Boodt, supra* at 628. Hence, the relevant question is not "whether any specific portion of the notice" contains the required information, but whether the notice—when read as a whole—contains the required information. *Id.*

### C. STANDARD-OF-CARE-STATEMENTS

WM Cardiovascular, Heiser,[4] and Shabahang[5] argue that plaintiff's notice failed to include a proper state-

---

[4] We note that, in their brief on appeal, WM Cardiovascular and Heiser also allege that plaintiff's notice did not properly include statements regarding what WM Cardiovascular and Heiser should have done to comply with the applicable standard of care. Although this argument was only given cursory treatment on appeal, we have examined the issue and conclude that plaintiff's notice was not deficient in this regard.

[5] Shabahang argues generally that the notice was entirely deficient, but on appeal only directly addresses plaintiff's purported failure to give notice of the applicable standard of care. By failing to adequately brief any other claims of error with regard to the sufficiency of plaintiff's notice, Shabahang abandoned those claims. See *Hamade v Sunoco, Inc (R&M)*, 271 Mich App 145, 173; 721 NW2d 233 (2006). Therefore, we shall limit our analysis accordingly.

ment of the specific standard of care applicable to each of them. We disagree.

Under MCL 600.2912b(4)(b), plaintiff's notice had to include a statement of the standard of care. The alleged standard must be particularized for each of the professionals and facilities named in the notices. *Roberts, supra* at 694.

### 1. WEST MICHIGAN CARDIOVASCULAR SURGEONS

Plaintiff's notice does not adequately address the standard of care applicable to WM Cardiovascular under a direct theory of liability for failure to properly train or hire. The notice merely provides that WM Cardiovascular should have hired competent staff members and properly trained them. But the notice identifies no relevant standard for determining competency or properly training staff persons. Nor can the standard be gleaned from the other sections of the notice: plaintiff failed to state how WM Cardiovascular's hiring and training practices violated that standard, failed to state which hiring practices or training methods it should have employed, and failed to state how those improper practices proximately caused Bush's injuries. For this reason, to the extent that plaintiff's claims rest on these theories, the trial court should have granted summary disposition in favor of WM Cardiovascular. *Id.* at 694-695.

However, when read as a whole, see *Boodt, supra* at 628, the notice did provide WM Cardiovascular with adequate notice of vicarious liability. The notice provided that facilities such as WM Cardiovascular had a duty to "properly train and hire competent employees . . . including physicians . . . who are able to competently treat, assess, chart, monitor, diagnose, care for, refer . . . and surgically treat patients . . . ." The notice

further provided that, on the basis of these duties, WM Cardiovascular was "responsible for the breach of the standard of practice of all their employees." This was sufficient to place WM Cardiovascular on notice that plaintiff alleged that WM Cardiovascular could be held vicariously liable for a breach of the applicable standard of care by its employees.

### 2. HEISER

If plaintiff's notice of the standard of care is read in isolation from the remainder of the notice, it clearly does not provide a particularized standard for Heiser. See *Roberts, supra* at 694. The standards of care for all the physicians are lumped together and stated in the most general of terms: "The standard of care or practice requires that physicians . . . be able to competently treat, diagnose, monitor, care for, refer to other specialties and surgically treat patients . . . ." Reduced to its core, this statement merely asserts that the standard requires physicians to be competent. But this sort of general averment is insufficient to satisfy the requirements of MCL 600.2912b(4)(b). See *Roberts, supra* at 694 (noting that general assertions that the standard of care requires the defendants to give " 'prope[r] care' " and render " 'competent advice' " are not adequately responsive). Nevertheless, when this section is read in conjunction with the other sections, plaintiff's notice adequately addressed the standard of care applicable to Heiser.

In the sections dealing with the manner of breach and the recommended actions, plaintiff noted that Heiser was required to be prepared "for possible aortic aneurysm laceration during repeat sternotomy" and had to "properly and carefully cannulate" Bush. The notice also provided that Heiser should have given Bush

an anticoagulant to reduce the likelihood of an "embolic event" and that after the surgery Heiser had a duty to "diagnose or treat the signs or symptoms of stroke." Although plaintiff did not directly indicate that these things were required under the standard of care, the context leaves no doubt that these statements are statements of the standard of care applicable to a cardiothoracic surgeon acting under the given facts. Hence, the notice provides that Heiser had a duty under the standard of care to be prepared for the types of complications that arise during a "repeat sternotomy," to take steps to reduce the likelihood of an "embolic event," to properly perform the cannulation procedure by placing the clamp in the proper place and in such a way as to reduce damage to the artery and prevent plaque fragmentation, and to ensure proper postoperative monitoring for stroke, which Heiser should have known was a possible complication with this type of surgery. Therefore, when read as a whole, plaintiff's notice contained a good-faith statement of the standard of care plaintiff alleged applied to Heiser. *Boodt, supra* at 626.

### 3. SHABAHANG

As already noted, plaintiff's notice did not contain an adequate statement of the applicable standards of care under the heading of that name. But as was the case with Heiser, when the notice is examined as a whole and without regard to the specific headings, the notice met the minimal requirements of MCL 600.2912b(4)(b).

In addition to the general statement that Shabahang had a duty under the applicable standard of care to competently treat and diagnose patients, plaintiff's notice also alleged that Shabahang had a duty to properly evaluate the risks associated with the various

procedures based on Bush's history before recommend-
ing a particular procedure. Specifically, plaintiff stated
that Shabahang "should have advised Mr. Bush of the
extreme risks involved" given Bush's "history of pedi-
atric cardiac surgery and the location of the aneurysm."
The notice also provided that Shabahang, like Heiser,
should have been prepared for the specific issues that
might arise during a procedure of this nature and
should have taken specific steps to reduce the likelihood
of both operative and postoperative complications. As
part of this duty, plaintiff alleged that Shabahang
should have ensured that Bush was properly monitored
for complications, such as stroke. Finally, plaintiff also
clearly indicated that Shabahang had a duty to use the
oscillating saw with sufficient care as to avoid lacerat-
ing the aneurysm.

Plaintiff's notice adequately addressed the standard
of care applicable to Shabahang as a cardiothoracic
surgeon.

#### D. STATEMENTS OF PROXIMATE CAUSE

WM Cardiovascular and Heiser also argue that plain-
tiff's notice failed to contain a proper statement con-
cerning how these defendants' alleged breaches of the
standard of care proximately caused Bush's injuries. We
do not agree.

Plaintiff's notice had to also include a statement of
the "manner in which it is alleged the breach of the
standard of practice or care was the proximate cause of
the injury claimed in the notice." MCL 600.2912b(4)(e).
In order to satisfy this requirement, the notice must
contain specific allegations regarding the conduct of the
named defendants. *Roberts, supra* at 699-700.

In the present case, we have already concluded that
plaintiff's notice met the minimum requirements for

alleging that WM Cardiovascular could be held vicariously liable for the actions of Heiser and Shabahang. Hence, whether plaintiff's notice met the requirements for the statements of proximate cause depends on whether the statements of proximate cause for Heiser and Shabahang met the requirements of MCL 600.2912b(4)(e).[6]

As with the standard of care, plaintiff's statement of proximate cause improperly bundled all defendants under one umbrella statement that was too general to meet the particularity requirements of the statute. See *Roberts, supra* at 699-700, citing MCL 600.2912b(4)(e). However, when read as a whole, the notice adequately states the manner in which Heiser's breaches of the standard of care are alleged to have caused Bush's injuries.

The notice provides that, because Heiser failed to properly perform the cannulation procedure, Bush's artery suffered injury and there was "fragmentation of the plaque." Plaintiff also alleged that Heiser's improper technique caused "compartment syndrome" and that all this resulted in the cannulae's being in for an excessive time. Finally, plaintiff asserted that, had Heiser ordered the use of an anticoagulant, Bush might not have suffered an embolic event and, had Heiser ensured proper monitoring, Bush's stroke could have been treated properly. These failures, plaintiff claimed, caused Bush to suffer "neurological injury, stroke, seizures, speech impairment, ambulation deficits, embolic phenomenon with subsequent brain stem syndrome

---

[6] Because WM Cardiovascular has not contested the statement of proximate cause for Shabahang, we shall here limit our analysis to the statement of proximate cause applicable to Heiser. Nevertheless, as noted later in this opinion, we conclude that the notice also contained an adequate statement of proximate cause for Shabahang.

with supranuclear opthalmoplegia, proximal upper extremity weakness and myocardial infarction." These statements, when read together, were sufficient to meet the notice requirements for proximate causation as applied to Heiser.

### E. SPECTRUM HEALTH'S CLAIMS OF ERROR

Spectrum Health also challenges the sufficiency of plaintiff's notice. Specifically, Spectrum Health contends that the notice does not meet the requirements for a statement of the standard of care and a statement of proximate causation for the hospital's staff or Heiser or Shabahang. We agree in part and disagree in part.

Although plaintiff's notice alleges errors on the part of Spectrum Health's nursing staff and physician assistants, the notice does not purport to state a separate standard of care for the nurses and physician assistants. This problem is compounded by the fact that the notice does not delineate the specific actions taken by the nursing staff or physician assistants that purportedly breached the standard of care. Rather, plaintiff's notice generally asserts that the staff should have performed monitoring, charting, assessing, and reporting and engaged in advocacy for the patient and otherwise challenged the actions of physicians. Finally, the notice does not state the manner in which the identified breaches proximately caused Bush's injuries. Thus, even when the notice is read as a whole, it does not adequately address the standard of care applicable to Spectrum Health's staff other than Heiser and Shabahang. For that reason, we agree with Spectrum Health that the trial court erred when it concluded that plaintiff's notice met the minimum requirements of MCL 600.2912b(4)(b) with regard to Spectrum Health's nursing staff and physician assistants. Likewise, to the

extent that plaintiff purported to give notice that Spectrum Health could be held directly liable for Bush's injuries on the basis of the theories that it negligently hired or failed to train its staff, for the same reasons we explained with regard to WM Cardiovascular, we conclude that the notice did not meet the requirements of MCL 600.2912b.

However, we disagree with Spectrum Health's contention that plaintiff failed to adequately provide notice that Spectrum Health could be held vicariously liable for the actions of Heiser and Shabahang. As noted above with regard to WM Cardiovascular, plaintiff provided notice that entities such as Spectrum Health were "responsible for the breach of the standard of practice of all their employees[,] agents[,] or assigns," which includes Heiser and Shabahang. Further, we reject Spectrum Health's argument that plaintiff had to include a statement that asserted that, had Spectrum Health's employees complied with the standard of care, Bush's chance of obtaining a more favorable result would have been at least 51 percent or higher, see *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 539; 687 NW2d 143 (2004), or a statement that Bush's injuries were reasonably foreseeable. The Legislature did not include these requirements in MCL 600.2912b(4), and we decline to read them into the statute.

Spectrum Health also argues that the notice did not provide proper statements of the standard of care or proximate cause for Heiser and Shabahang. As already noted, plaintiff's notice included proper statements of the standard of care for both Heiser and Shabahang. And we have also already considered and rejected the argument that plaintiff's notice failed to make a proper statement of proximate cause for Heiser. Therefore, the

only remaining question is whether the notice properly included a statement of proximate cause applicable to Shabahang.

As with the statement of proximate cause applicable to Heiser, when read in its entirety, plaintiff's notice met the minimum requirements for a statement of proximate cause regarding the actions of Shabahang. *Boodt, supra* at 626. The notice provided that Shabahang should not have recommended such a dangerous procedure and should have properly informed Bush of the degree of danger. It also provided that Shabahang should have been better prepared for the complications associated with this type of surgery and should not have lacerated the aneurysm. Plaintiff further alleged that this laceration directly "initiated the cascade of events described herein leading to brain injury and left leg compartment syndrome." Finally, plaintiff stated that, with the use of an anticoagulant and proper monitoring, the injuries associated with the embolic event might have been avoided or mitigated. These statements were sufficient to meet the requirements for a statement of proximate cause under MCL 600.2912b(4)(e) with regard to Shabahang.

### F. CONCLUSION

When read as a whole, plaintiff's notice met the minimum requirements for statements of the standard of care and proximate cause for Heiser and Shabahang and adequately gave notice that WM Cardiovascular and Spectrum Health could be vicariously liable for the actions of Heiser and Shabahang. However, the notice did not meet the requirements of MCL 600.2912b to the extent that plaintiff sought to hold WM Cardiovascular and Spectrum Health directly liable under a negligent-hiring or a failure-to-train theory and to the extent that

plaintiff sought to hold Spectrum Health liable on the basis of the actions of its staff members other than Heiser or Shabahang.

### III. PREMATURE FILING OF COMPLAINT

We shall next address Shabahang's argument that the trial court erred when it concluded that plaintiff did not prematurely file suit in violation of MCL 600.2912b(1).

#### A. STATUTORY NOTICE REQUIREMENTS

A plaintiff is prohibited from commencing an action alleging medical malpractice unless the plaintiff has given the health professional written notice "not less than 182 days before the action is commenced." MCL 600.2912b(1). The notice must include a statement of the factual basis for the claim, the applicable standard of care, the manner in which it is claimed that the health professional breached the standard of care, the alleged actions that should have been taken to achieve compliance with the standard of care, the manner that the breach proximately caused the injury, and the names of all health professionals notified under the section in relation to the claim. MCL 600.2912b(4). The defendant's remedy for a plaintiff's failure to comply with these provisions is dismissal of the plaintiff's case. *Burton, supra* at 753. Our Supreme Court has further held that the filing of a complaint before the expiration of the 182-day notice period does not commence the suit. *Id.* at 754. Hence, a suit filed before the expiration of the 182-day notice period will not toll the period of limitations under MCL 600.5856(a). *Burton, supra* at 756.

Within 154 days after receipt of the notice required by MCL 600.2912b(1), a defendant must furnish a

written response to the plaintiff. MCL 600.2912b(7).
The response must include a statement of the factual
basis for the defense, the standard of care the health
professional claims applies, the manner in which it is
claimed that the health professional complied with the
standard of care, and the manner in which the health
professional contends that the alleged negligence was
not the proximate cause of the plaintiff's injuries. MCL
600.2912b(7)(a) to (d). If the plaintiff does not receive
the written response required under MCL 600.2912b(7)
within the 154-day period, the plaintiff may commence
the suit "upon the expiration of the 154-day period."
MCL 600.2912b(8). Hence, although the remedy for a
plaintiff's failure to provide an adequate notice is dis-
missal of the action, the plaintiff's remedy for a defen-
dant's failure to file an adequate response is that the
plaintiff *may* commence the suit up to 28 days earlier
than would otherwise be required under MCL
600.2912b(1).

### B. PREMATURE FILING AND NOTICE

In the present case, it is undisputed that Shabahang
provided a response to plaintiff's notice. However, on
appeal plaintiff argues that the notice did not meet the
requirements of MCL 600.2912b(7). Therefore, plaintiff
further contends, he could properly commence his suit
upon the expiration of the 154-day period. See MCL
600.2912b(8). Shabahang counters that plaintiff could
not unilaterally determine that the response was inad-
equate. Instead, the response must be considered pre-
sumptively adequate. Therefore, Shabahang continues,
once he filed his response, plaintiff was required to wait
the full 182 days.[7] We do not agree that plaintiff had to

---

[7] After hearing oral arguments on the adequacy of Shabahang's re-
sponse to plaintiff's notice, the trial court ruled that plaintiff's complaint

successfully challenge the validity of the response before filing his complaint under the shortened period provided by MCL 600.2912b(8).

Under the plain language of MCL 600.2912b(7), a medical-malpractice defendant must provide a written response that includes the statements enumerated under MCL 600.2912b(7)(a) through (d). Further, a plaintiff is entitled to commence the suit up to 28 days before the expiration of the 182-day waiting period required under MCL 600.2912b(1), if the plaintiff "does not receive the written response *required* under [MCL 600.2912b(7)] within the required 154-day time period . . . ." MCL 600.2912b(8) (emphasis added). Because the plaintiff is entitled to the response *required* by MCL 600.2912b(7) within the 154-day period, it is clear that the defendant's response must be timely *and* must meet the substantive requirements of MCL 600.2912b(7)(a) through (d). Therefore, if a defendant's response is either untimely or does not meet the requirements of MCL 600.2912b(7), the plaintiff will be entitled to the remedy provided under MCL 600.2912b(8). However, the statute does not directly address whether a plaintiff must first challenge the validity of a defendant's response before utilizing the early-filing provisions of MCL 600.2912b(8).

Shabahang relies in part on our Supreme Court's decision in *Saffian v Simmons*, 477 Mich 8; 727 NW2d 132 (2007), for the proposition that plaintiff cannot unilaterally determine that his response did not meet the requirements of MCL 600.2912b(7).

In *Saffian*, the plaintiff sued for malpractice. After the defendant failed to answer the plaintiff's complaint,

---

was not prematurely filed. Hence, the trial court implicitly determined that Shabahang's response did not meet the requirements of MCL 600.2912b(7). On appeal, Shabahang does not challenge this determination.

the plaintiff filed a default. *Saffian, supra* at 10. On appeal, the defendant argued that he did not have to answer the plaintiff's complaint because the plaintiff's affidavit of merit did not meet the substantive requirements of MCL 600.2912d and, therefore, never commenced the suit. Our Supreme Court disagreed.

The Court first noted that MCL 600.2912e(1) "provides that a defendant in a medical malpractice action 'shall' answer the complaint within 21 days after the plaintiff has filed 'an affidavit in compliance with section 2912d.' " *Saffian, supra* at 12. The Court then explained that "nothing in either MCL 600.2912e(1) or MCR 2.108(A)(6) authorizes a defendant to determine unilaterally whether the plaintiff's affidavit of merit satisfies the requirements of MCL 600.2912d." *Saffian, supra* at 13. After noting the absence of statutory language providing for a defendant's unilateral determination concerning the sufficiency of the affidavit, the Court approvingly noted that the Court of Appeals majority and concurrence had determined that it was up to the trial court to determine the sufficiency of the pleadings. *Id.* As such, until properly rebutted in a judicial proceeding, an affidavit of merit is presumed valid. *Id.* The Court also justified its holding on policy grounds; it explained that the presumption would establish a "more orderly process" for challenging affidavits and advance "the efficient administration of justice . . . ." *Id.* at 14.

Just a few months later, our Supreme Court reiterated that affidavits of merit are presumptively valid. See *Kirkaldy v Rim*, 478 Mich 581, 586; 734 NW2d 201 (2007), citing *Saffian, supra* at 13. It further clarified that "a complaint and affidavit of merit toll the period of limitations until the validity of the affidavit is successfully challenged in 'subsequent judicial proceed-

ings.' " *Kirkaldy, supra* at 586. "Thus, if the defendant believes that an affidavit is deficient, the defendant must challenge the affidavit." *Id.* And, if the challenge is successful, the proper remedy is dismissal without prejudice, after which time the period of limitations resumes running. *Id.*

This Court, in turn, adopted by analogy our Supreme Court's treatment of potentially deficient affidavits of merit in *Kirkaldy* as the proper method for treating potentially deficient notices under MCL 600.2912b(1). See *Potter, supra* at 286. Hence, under *Potter*, a notice of intent is presumed valid until successfully challenged. *Id.* Further, the remedy for a successful challenge "is dismissal without prejudice, affording the plaintiff the opportunity to cure the deficiency within the time remaining within the limitations period as theretofore tolled by the now-invalidated notice or the subsequent filing of the complaint." *Id.*

Although the presumption of validity for affidavits of merit and notices under *Saffian, Kirkaldy*, and *Potter* appears applicable by analogy to the response required by MCL 600.2912b(7), on closer examination, the underlying bases in support of a presumption of validity for affidavits of merit and notices actually militate against such a presumption for the response required by MCL 600.2912b(7). As a preliminary matter, it must be noted that the Court in *Potter* adopted the presumption for notices solely on the basis of *Kirkaldy*, which in turn relied exclusively on *Saffian*; neither the Court in *Kirkaldy* nor the Court in *Potter* offered an independent analysis of the bases for the presumption. In *Saffian*, our Supreme Court relied on three bases for the creation of the presumption of validity for affidavits of merit: (1) the absence of statutory language permitting a defendant to unilaterally determine whether the

affidavit was valid, (2) the fact that trial courts typically determined the sufficiency of pleadings, and (3) policy reasons such as the orderly and efficient administration of justice. *Saffian, supra* at 13-14.

Under the statutory provisions governing affidavits of merit and notices of intent, the Legislature did not specifically provide a remedy for a plaintiff's failure to comply with the substantive requirements for affidavits of merit and notices. See MCL 600.2912d and MCL 600.2912b. In contrast, MCL 600.2912b(8) provides a remedy for a defendant's failure to file the response required by MCL 600.2912b(7). Under the plain language of this statute, the plaintiff "may commence" the medical-malpractice suit after the passage of 154 days rather than waiting the full 182 days required by MCL 600.2912b(1). See MCL 600.2912b(8). By stating that the plaintiff "may commence" the suit, the Legislature implicitly—if not explicitly—gave the plaintiff the discretion to decide whether to avail himself or herself of the benefit of MCL 600.2912b(8).

Moreover, a defendant's response is not a pleading under MCR 2.110(A) and is not a prerequisite for the filing of any pleading. This is in contrast to the requirements for an affidavit of merit and notice, which are both prerequisites to commencing a medical-malpractice suit. See MCL 600.2912b(1) and MCL 2912d(1); see also *Scarsella v Pollak*, 461 Mich 547, 553; 607 NW2d 711 (2000) (noting that a filing of a medical-malpractice complaint is ineffective without an affidavit of merit), and *Burton, supra* at 752-753 (noting that compliance with MCL 600.2912b(1) is mandatory before the commencement of a medical-malpractice suit). Thus, a challenge to the sufficiency of an affidavit of merit or notice constitutes a challenge to the suit as a whole. Because a defective affidavit of merit or notice

will result in the dismissal of the plaintiff's suit, it is essential to the efficient administration of justice that the trial court determine the validity of the affidavit or notice. In contrast, a plaintiff's unilateral decision to file early in the belief that the defendant's response under MCL 600.2912b(7) was deficient does not substantively affect the defendant's rights; the defendant may still challenge the plaintiff's filing as premature under MCL 600.2912b(1). Indeed, a plaintiff who files before the expiration of the 182-day waiting period in reliance on MCL 600.2912b(8) assumes the risk that the trial court will conclude that the defendant's response was adequate and, therefore, dismiss the plaintiff's case. Finally, because of the limited number of days within which a plaintiff may make use of MCL 600.2912b(8), it is impractical to require plaintiffs to challenge the defendant's response by motion and hearing before the trial court. By the time the parties could schedule a hearing and brief the issue, much—if not all—of the time afforded to the plaintiff by MCL 600.2912b(8) would be lost.

For these reasons, we conclude that a plaintiff does not need to challenge the sufficiency of the response required under MCL 600.2912b(7) before utilizing the shortened filing period provided by MCL 600.2912b(8). Nevertheless, we caution that a plaintiff who files suit before the expiration of the 182-day period required under MCL 600.2912b(1) on the basis that the defendant's response did not meet the requirements of MCL 600.2912b(7) still risks dismissal of his or her suit if the trial court later determines that the defendant's response was adequate. See *Burton, supra* at 756.

### C. CONCLUSION

For these reasons, we conclude that plaintiff could properly choose to file after the expiration of the

154-day period specified in MCL 600.2912b(8) in reliance on the belief that Shabahang's response did not meet the requirements of MCL 600.2912b(7). Consequently, the trial court did not err when it concluded that plaintiff's complaint was not prematurely filed.

### IV. GENERAL CONCLUSIONS

Although it could have been drafted more artfully, plaintiff's notice contained adequate statements of the standard of care and proximate causation applicable to Heiser and Shabahang. Further, the notice put WM Cardiovascular and Spectrum Health on notice that plaintiff claimed that they could be held vicariously liable for the actions of Shabahang and Heiser. Therefore, the trial court did not err when it refused to grant summary disposition on the basis of defendants' claims that the notice was deficient in these regards. However, plaintiff's notice did not meet the requirements of MCL 600.2912b for purposes of holding WM Cardiovascular and Spectrum Health directly liable under a negligent-hiring or failure-to-train theory. It was also insufficient to provide notice of vicarious liability with regard to Spectrum Health's staff members other than Heiser and Shabahang. Therefore, the trial court should have granted summary disposition in favor of WM Cardiovascular and Spectrum Health to the extent that plaintiff's claims rely on direct-liability theories and to Spectrum Health to the extent that plaintiff's claims arise from the actions of Spectrum Health's staff other than Heiser and Shabahang.[8] Finally, because plaintiff could properly elect to file suit after 154 days on the basis of his belief that Shabahang's response to plain-

---

[8] As noted above, the trial court already dismissed plaintiff's claims against Spectrum Health to the extent that those claims were based on the actions of Spectrum Health's physician assistants.

tiff's notice was deficient, the trial court did not err when it concluded that plaintiff's suit was not prematurely filed.

We affirm in part, reverse in part, and remand for entry of partial summary disposition without prejudice in favor of WM Cardiovascular and Spectrum Health consistent with this opinion. The applicable limitations periods remain tolled until entry of the grants of summary disposition. In all other respects, we affirm. We do not retain jurisdiction.

BECKERING, J., concurred.

FITZGERALD, P.J. (*concurring in part and dissenting in part*). I respectfully dissent from the majority's conclusion in part III that the shortened notice period contained in MCL 600.2912b(8) applies when a plaintiff unilaterally determines that a defendant's response does not satisfy the requirements of MCL 600.2912b(7).

In *Westfall v McCririe,* unpublished opinion per curiam of the Court of Appeals, issued March 30, 2006 (Docket No. 265386),[1] the plaintiffs argued that they were relieved of their obligation to wait 182 days to file their complaint because the defendants' response to their notice of intent (NOI) failed to comply with MCL 600.2912b(7), thus triggering the shortened 154-day notice provision in MCL 600.2912b(8) and eliminating the 182-day notice provision of MCL 600.2912b(1). A panel of this Court determined on p 3 that "[r]esolution of this issue requires this Court to construe MCL 600.2912b to ascertain whether the Legislature intended to authorize a plaintiff in a medical malpractice case to unilaterally determine that a defendant's re-

---

[1] The Supreme Court denied leave to appeal in an order dated April 24, 2007. 477 Mich 1110 (2007). I was a member of the *Westfall* panel.

sponse failed to comply with MCL 600.2912b(7) so as to relieve the plaintiff of the obligation to wait 182 days after filing the NOI before filing the complaint." The panel disagreed with the plaintiffs' argument, and opined on p 4:

> Plaintiffs, who filed their complaint against defendants 156 days after providing defendants with the NOI, argue that the shortened notice period contained in MCL 600.2912b(8) applies in this case. However, plaintiffs did receive defendants' written response within the 154-day time period. The language of MCL 600.2912b(8) does not permit a plaintiff to unilaterally determine whether a defendant's response satisfies the detailed requirements of MCL 600.2912b(7). Furthermore, MCL 600.2912b does not authorize a plaintiff to ignore the 182-day notice requirement in MCL 600.2912b(1) if the defendant's response does not comply with MCL 600.2912b(7). The Legislature could have specifically authorized a plaintiff to make a determination regarding whether a defendant's response complied with MCL 600.2912b(7). However, it did not do so. If the Legislature had intended to allow medical malpractice plaintiffs to unilaterally determine whether a defendant's response failed to comply with MCL 600.2912b(7) so as to relieve plaintiffs of the obligation to wait 182 days after submitting their NOI before filing a complaint, it would have expressly provided such authority in MCL 600.2912b. Nothing in the language of MCL 600.2912b indicates that the Legislature intended to grant plaintiffs the authority to unilaterally make such a determination. When the language of a statute is not ambiguous, a statute must be enforced as written. *Pohutski* [v *City of Allen Park,* 465 Mich 675, 683; 641 NW2d 219 (2002)]. A court may not speculate as to the probable intent of the Legislature beyond the language used in the statute. *Cherry Growers, Inc* [v *Agricultural Marketing & Bargaining Bd,* 240 Mich App 153, 173; 610 NW2d 613 (2000)]. Furthermore, in construing a statute, this Court should assume that an omission in the statute was intentional. *People v Wilson,* 257 Mich App 337, 345; 668 NW2d 371 (2003), vacated in

part on other grounds 469 Mich 1018 (2004). Because the
Legislature did not specifically authorize a medical mal-
practice plaintiff to unilaterally determine whether a medi-
cal malpractice defendant's response complied with MCL
600.2912b(7) as to relieve the plaintiff of his obligation to
wait 182 days after filing the NOI before filing the com-
plaint, we presume that the Legislature's omission of such
language was intentional and refuse[] to expand MCL
600.2912b(8) beyond the language used in the statute.
Irrespective of whether defendants' response satisfied the
detailed requirements of MCL 600.2912b(7), plaintiffs re-
ceived defendants' response within 154 days after provid-
ing defendants with their NOI. Therefore, the shortened
notice period contained in MCL 600.2912b(8) does not
apply.

I agree with the *Westfall* analysis and, therefore, dis-
agree with the majority's conclusion that plaintiff could
properly choose to file the complaint after the 154-day
period specified in MCL 600.2912b(8) on the basis that
the defendant's response did not meet the requirements
of MCL 600.2912b(7). Even assuming, as the majority
does, that "a plaintiff's unilateral decision to file early
in the belief that the defendant's response under MCL
600.2912b(7) was deficient does not substantively affect
the defendant's rights," *ante* at 725, such a policy
consideration is not relevant to determining whether
the language of the statute is clear on its face.